**UNDERWRITERS AT LLOYD'S and Orion Insurance Co., Ltd., et al., Appellants,**

**v.**

**R. H. NICHOLS et al., Appellees.**

**No. 18313.**

United States Court of Appeals Eighth Circuit.

June 30, 1966.

R. A. Eilbott, of Reinberger, Eilbott, Smith & Staten, Pine Bluff, Ark., for appellants. Reinberger, Eilbott, Smith & Staten, Pine Bluff, Ark., was on the brief.

William S. Arnold, of Arnold & Hamilton, Hamburg, Ark., submitted brief for appellees, Nichols, Cotton, Selby and Montrose Gin Co., without oral argument.

Before VOGEL, Chief Judge, MEHAFFY, Circuit Judge, and Mc-MANUS, District Judge.

VOGEL, Chief Judge.

The sole issue involved in this appeal is whether the District Court erred in determining that it did not have jurisdiction over the subject matter of the complaint for interpleader filed in this case. The complaint was dismissed with prejudice by the District Court. We reverse.

Plaintiffs-appellants, all British insurance companies, issued certain policies of liability insurance to one Roy H. Sheffield, Jr., doing business as Dixie Flyers, which policies purported to indemnify Sheffield against liability from crop spraying operations which he carried on in the State of Arkansas. Appellants alleged that for the policy period beginning June 22, 1965, and ending on June 22, 1966, the aggregate coverage provided to Sheffield by them was $20,000 subject to a $750 deductible for each and every property damage claim entered against Sheffield.

During the policy period, Dixie Flyers, through its employees, caused certain rice crops, on several occasions, to be sprayed with an herbicide which was dangerous to broad-leafed plants, includ-

ing cotton. It is claimed that some of the herbicide fell or drifted onto cotton crops growing in fields adjacent to or in the vicinity of the rice fields that were sprayed. The growing cotton was allegedly damaged as a result. Because of the spraying operations, as found by the District Court,

> " * * * About 18 claims of cotton farmers for damages have been or will be made against Sheffield; the total claims are expected to amount to more than $50,000."

At the time of the filing of the instant cause of action two separate suits had already been commenced against Sheffield in the state courts of Arkansas because of the alleged damages caused by Sheffield's crop spraying activities. The aggregate of the amounts demanded in those two suits exceed $25,000.

The actual and potential claimants for damages from Sheffield, all citizens of Arkansas, are defendants-appellees herein. Further defendants-appellees include Sheffield, Sheffield's employees and the owners of the rice lands to which the offending herbicide was applied.

Appellants sought to determine their liability, if any, on all claims and potential claims arising out of the crop spraying incidents by tendering $20,000, the alleged amount of their insurance liability to Sheffield, into the registry of the District Court and by attempting to proceed in an interpleader action under Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1] Appellants, desiring to compel the litigation of all claims against Sheffield in this single action, also sought to enjoin the further prosecution of the two pending Arkansas state court suits and the initiation of additional state court actions. Appellants deny any liability on the part of Sheffield to the cotton growers and, alternatively, allege that if there was liability in excess of the policy coverages, that recovery should be prorated among the successful claimants from the $20,000 tendered into court.

It is obvious that without the intervention of the appellants there would not be the requisite diversity of citizenship needed for federal court jurisdiction. Sheffield, all claimants and the other appellees are clearly citizens of Arkansas. It is also apparent that appellants would have no standing in the Arkansas state courts to assert their policy limitation defense until after individual judgments had been rendered against Sheffield exceeding the $20,000 policy limits, since Arkansas has no direct action statute—i. e., a statute giving an injured party the right to proceed directly against the alleged tort feasor's insurance company. Only where there is an unsatisfied judgment can the injured party proceed against the insurance company. Ark. Stat. Ann. §§ 66–4001, 66–4002 (1966 Replacement). Appellants fear that unless all claims are disposed of in this one federal action, they will perhaps be required to pay sums in excess of policy limits. Appellants' reasoning is that after paying off initial successful claimants from the state courts and exhausting the available funds under the policy, they could possibly still be forced to pay later successful claimants on the theory that they, appellants, should have prorated the available funds among all claimants.

1. Rule 22 provides, in pertinent part:
   "(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. * * *
   "(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules. As amended Dec. 29, 1948, effective Oct. 20, 1949."

Appellees do not dispute appellants' assertion that it is an open question under Arkansas law as to whether such additional liability would ensue when there are multiple claims growing out of the same coverage.

The District Court, in denying appellants' application for a preliminary injunction and in dismissing appellants' claims with prejudice, held that the court did not have jurisdiction over the instant dispute under Rule 22, set out at fn.n. 1, supra, there being unliquidated tort claims involved. Since the claims were unliquidated, the lower court felt appellants were in no immediate danger of facing multiple liability so as to make Rule 22 applicable. This appeal followed.

Under interpleader, as most simply defined at 48 C.J.S. Interpleader § 2, p. 38 (1947), one

" * * * who owes or is in possession of money or property in which he disclaims any title or interest but which is claimed by two or more persons, prays that the claimants be compelled to state their several claims, so that the court may adjudge to whom the matter or thing in controversy belongs. The office or function of the remedy is to protect one against conflicting claims and double vexation with respect to one liability."

It might be beneficial at this point to briefly summarize the federal law of interpleader as it has developed over the past fifty years. On this subject see generally 2 Barron and Holtzoff, Federal Practice and Procedure, §§ 551 et seq. (Rev. Ed., 1961); 3 Moore's Federal Practice, par. 22.01 et seq. (2d Ed., 1964); 6 Nichols, et al., Cyclopedia of Federal Procedure, §§ 22.01 et seq. (3d Ed., 1951); and the excellent series of articles written by Professor Zechariah Chaffee, Jr.[2] See, also, the scholarly discussion of the law of interpleader by then District Judge J. Skelly Wright in Pan American Fire & Cas. Co. v. Revere, E.D.La., 1960, 188 F.Supp. 474.[3]

Interpleader first originated in the old common law of interpleader but the primary development and principles of interpleader occurred in equity where the use of interpleader was most common. As the late Judge John Sanborn stated for this court in Klaber v. Maryland Cas. Co., 8 Cir., 1934, 69 F.2d 934, 936–937, 106 A.L.R. 617:

"The essential elements of the equitable remedy of interpleader are: (1) The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded. (2) All their adverse titles or claims must be dependent, or be derived from a common source. (3) The plaintiff must not have nor claim any interest in the subject-matter. (4) He must have incurred no independent liability to either of the claimants and must stand perfectly indifferent between them, in the position merely of a stakeholder. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, § 1322; Wells, Fargo & Co. v. Miner (C.C.) 25 F. 533. See, also, Calloway v. Miles (C.C.A. 6) 30 F.(2d) 14; Connecticut General Life Ins. Co. v. Yaw (D.C.) 53 F.(2d) 684."

These requisites, often given lipservice by the courts but frequently avoided as such, hampered the utility of the interpleader device.

Beginning in 1917 the United States Congress enacted the first of a series of interpleader acts. 39 Stat. 929 (1917). The initial act was amended in 1925[4]

---

2. Professor Chaffee's articles include the following: Modernizing Interpleader, 30 Yale L.J. 814 (1921); Interstate Interpleader, 33 Yale L.J. 685 (1924); Interpleader in the United States Courts, 41 Yale L.J. 1134, 42 Yale L.J. 41 (1932); Federal Interpleader Act of 1936, 45 Yale L.J. 953, 1161 (1936); Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377 (1940); Broadening the Second Stage of Interpleader, 56 Harv.L.Rev. 541, 929 (1943).

3. Judge Wright now serves on the United States Court of Appeals for the District of Columbia.

4. 43 Stat. 976.

and was repealed and replaced in 1926. 44 Stat. 416 (1926). In 1936 a new interpleader act was passed. 49 Stat. 1096 (1936). The 1936 act was last amended in 1948 by the Judicial Code and Judiciary Act at the time when 28 U.S.C. was enacted into positive law. 62 Stat. 869 (1948). The act now appears in 28 U.S.C. §§ 1335, 1397 and 2361. These different acts varied from each other in certain respects but the culmination of these acts " * * * extended the jurisdiction of the federal courts with respect to interpleader actions." 2 Barron and Holtzoff, supra, § 551, at p. 229. In certain respects the 1926 act was narrower than the earlier 1917 act and later acts, but discussion of this point will be deferred until relevant, infra. It is not necessary to set out the full text of these acts since they are only collaterally relevant to this appeal.

Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., set out at f.n. 1, supra, was promulgated in 1937 and stands as promulgated except that subparagraph (2) was amended, effective October 20, 1949, to reflect the passage of Title 28 U.S.C. into positive law. Professor Moore, in his treatise, notes that Rule 22 " * * * provides the most modern and liberal method of obtaining interpleader to be found." 3 Moore, supra, par. 22.04 at p. 3007. By its own terms Rule 22 is intended to be "in addition to" statutory interpleader "and in no way supersedes or limits" remedies provided under statutory interpleader.

█ As already noted, the instant case arises under Rule 22 rather than under the 1948 statutory interpleader act. The 1948 act requires as a jurisdictional prerequisite "Two or more adverse claimants, of diverse citizenship", 28 U.S.C. § 1335(a) (1). Herein all actual and potential claimants are from Arkansas, defeating jurisdiction of the instant controversy under the 1948 act. However, Rule 22 raises no jurisdictional problems in this regard. Since the interpleader acts and Rule 22 are so similar in construction, case precedents arising under the various acts are certainly relevant to the instant dispute and will be discussed herein.

█ Appellees rely on the case of Klaber v. Maryland Cas. Co., supra, as primary support for their proposition that Rule 22 is inapplicable herein. However, Klaber was decided under the 1926 interpleader act and for this reason the result therein is not necessarily binding under Rule 22. In Klaber this court refused to allow an interpleader proceeding which arose out of an automobile accident. Therein the insurance company involved attempted to join all potential claimants to determine its liability under the policy at issue. It was alleged by the company that the claims against its insured would exceed policy limits. At the time of the initiation of the interpleader action Klaber was the only injured party who had obtained a judgment against the insured. Klaber's recovery did not exceed the policy limits.

In Klaber this court stated, at page 939 of 69 F.2d:

"If the bill before us showed that the defendants other than Klaber were bona fide adverse claimants against the company within the meaning of the Interpleader Act, and that the company was a disinterested stakeholder, we would be inclined to hold that it might maintain this suit under the act. * * *

* * * * * *

"We are convinced, however, that, under the allegations of the bill, Klaber was the only defendant who was an actual claimant, and that the other defendants are persons who may become claimants depending upon whether they succeed in procuring judgments against the assured or whether they do not.

* * * * * *

"Our conclusion is that the bill is not one which comes within the Interpleader Act, and that the court therefore was clearly without authority to enjoin Klaber from proceeding with his garnishment, and could not compel those defendants who were citizens

of states other than Nebraska to interplead."

In *Klaber* we noted that under the 1917 interpleader act jurisdiction would lie where " * * * two or more adverse claimants * * * are claiming *or may claim* to be entitled to such insurance or benefits." 69 F.2d at 938, citing 39 Stat. 929. (Emphasis supplied.) Very significantly the 1926 act did not contain the above italicized portion of the 1917 act and it was thus of much narrower scope. This was fatal to the insurance company in *Klaber*, which was faced with only contingent claims except for Klaber's judgment. Under the 1926 act interpleader could not lie, in effect, until potential tort claims had been liquidated to an extent whereby the value of such claims exceeded the available fund involved. Significantly, Rule 22, quoted in detail at f.n. 1, supra, applicable in this case, is similar to the 1917 act and much broader than the 1926 act in that interpleader will lie when potential " * * * claims are such that the plaintiff is *or may be* exposed to double or multiple liability." Rule 22, Federal Rules of Civil Procedure, 28 U.S.C.A. (Emphasis supplied.) Thus it is clear from the language of Rule 22 that it is of greater applicability than the 1926 act under which *Klaber* arose. The insurance company in *Klaber* could have possibly saved its action under the wording of either Rule 22 or the 1917 act. Rule 22 arguably provides for interpleader jurisdiction even though potential tort claims, clearly recognizable though not yet liquidated, against the stakeholder have not been conclusively established. See, A/S Krediit Pank v. Chase Manhattan Bank, S.D.N.Y., 1957, 155 F. Supp. 30, 33–34, aff'd, 2 Cir., 1962, 303 F.2d 648, a case discussing the 1917 and 1926 interpleader acts and *Klaber* as they relate to the interpleader codification in the Judicial Code and Judiciary Act of 1948, supra, and Rule 22. The 1948 act restored the "may claim" clause of the 1917 act.

In discussing the *Klaber* precedent and its applicability under the 1948 act and Rule 22, Professor Moore makes the following observations in 3 Moore, supra, par. 22.08 [1] at pp. 3024–3025:

" * * * The circuit court of appeals dismissed the bill [for interpleader] on the grounds: (1) that complainant was an interested party inasmuch as it sought in other actions to defeat or diminish claims of injured persons that were being sued on in actions against the insured [on this point see footnote 5, infra]; and (2)

5. In *Klaber* we had stated at page 939 of 69 F.2d:

"We are also convinced that the company is not a disinterested stakeholder. It does not aver that it is. The facts pleaded show that it is not. It admits no rights in the defendants other than Klaber to the fund, and no liability of either itself or its assured to them. It occupies a position of active hostility to all defendants except Klaber, and must, if it can, prevent their ever obtaining any claims against the fund. See Stusser v. Mutual Union Ins. Co., 127 Wash. 449, 221 P. 331, 333; Pope v. Missouri Pac. Ry. Co. (Mo.Sup.) 175 S.W. 955, 957. Moreover, if it succeeds in defeating their claims against its assured, there will be about $6,000 left in the registry of the court after payment of the Klaber judgment, to which the company alone will have a claim." This point is not directly at issue in the instant case. We do note, however, from an historical standpoint, that in strict common law interpleader the plaintiff had to be a completely disinterested stakeholder. See *Klaber v. Maryland Cas. Co.*, supra, at p. 937 of 69 F.2d. A bill in the nature of interpleader developed to cover the situation where a plaintiff seeking interpleader denied any liability (making him at least technically an interested party) yet was willing to tender the entire amount of available money into court and abide by the court's decision. The 1936 interpleader act was the first to specifically encompass, by its terms, bills in the nature of interpleader. Today 28 U.S.C. § 1335(a) specifically contemplates bills "in the nature of interpleader". The same is true of Rule 22 whereunder it does not matter that "plaintiff avers that he is not liable in whole or in part to any or all of the claimants." Interpleader still lies. Thus *Klaber's* holding as to interested parties being unable to seek interpleader is no longer the

that there was only one actual claimant against the surety company, namely, Klaber. The first ground for dismissal is probably obviated by the 1936 and 1948 Acts, which expressly authorize suits in the nature of interpleader. The second ground for dismissal seems sound under the 1936 Act, inasmuch as there was no 'may claim' clause in that Act. The omission of the 'may claim' clause made statutory interpleader more restrictive and hence less practical than non-statutory interpleader under paragraph (1) of Rule 22. It is, therefore, not surprising to find some judicial reluctance to deny relief where the possibility of multiple claimants was manifested." [Original footnote citations omitted.]

See, also, Chaffee, Federal Interpleader Act of 1936:II, 45 Yale L.J. 1161, 1163–1167. Professor Moore would seem to be eminently correct in his conclusions.

█ The court below did not accept appellees' position herein and base its decision on *Klaber,* stating that because of

"The liberalization of federal interpleader jurisdiction and practice effected by the promulgation of Rule 22, effective in 1938, and by the rewriting of the Federal Interpleader Act in connection with the overall revision of the Judicial Code in 1948, * * *

* * * * * *

" * * * the Court recognizes that the decision of the Court of Appeals for this Circuit in Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, which the Court at one time felt tentatively was a bar to the granting of the relief here sought, cannot be considered as such."

law since *Klaber* was decided in 1934 prior to the passage of the 1936 act. See, e. g., New York Life Ins. Co. v. Lee, 9 Cir., 1956, 232 F.2d 811, 814; Standard Sur. & Cas. Co. v. Baker, 8 Cir., 1939, 105 F.2d 578, 580; Pan American Fire & Cas. Co. v. Revere, supra, at pages 477–

The court also discounted the precedent of American Indemnity Co. v. Hale, W.D. Mo., 1947, 71 F.Supp. 529, on the grounds that the judge in *Hale* was relying on *Klaber.* In spite of this determination, however, the court below held:

"It may be conceded that both the Act and Rule 22 are to be construed liberally. It may be conceded also that in instances the statute and the Rule give a choice of forum to an interpleader and may permit the litigation in federal courts of cases which would not be heard there ordinarily. The Court does not believe, however, that federal interpleader jurisdiction extends so far as to cover a situation where, as here, the claims with which a liability insurer is faced are not only potential but are also doubly contingent. As of this time the liability of plaintiffs to the cotton farmers is secondary, and is contingent, first, upon the liability of Sheffield being established, and, second, upon it developing that he is not financially able to satisfy judgments against him or to reduce them to an aggregate sum within plaintiffs' policy limits. From what has been said, it follows that the complaint must be dismissed."

In arriving at its decision the trial court discredited a contrary decision in Pan American Fire & Cas. Co. v. Revere, supra, where interpleader jurisdiction was found to exist. The *Revere* decision was accepted and followed in Commercial Union Ins. Co. v. Adams, S.D.Ind., 1964, 231 F.Supp. 860, 863–864. *Revere* arose in Louisiana and involved a discussion of both Rule 22 and the 1948 interpleader act, although Rule 22 was ultimately held not to be available therein because of certain venue and service problems not present herein. However, Judge Wright very thoroughly delved into and

479 of 188 F.Supp.; John Hancock Mut. Life Ins. Co. v. Kegan, D.C.Md., 1938, 22 F.Supp. 326. See, also, 3 Moore, supra, par. 22.07 [1] at pages 3019–3020; Chaffee, The Federal Interpleader Act of 1936: I, 36 Yale L.J. 963, 970–971.

discussed Rule 22 and its various ramifications. The court below refused to follow *Revere* since "Arkansas has no direct action statute comparable to that of Louisiana", meaning that potential claims against appellants herein are doubly contingent, depending ultimately upon Sheffield's liability and his inability to financially meet all claims recovered by various appellees against him. With a direct action statute, of course, an insurer would be subject to suit immediately rather than having suit deferred until after a judgment had been rendered against its insured and returned unsatisfied. In the latter situation the chances of suit being brought against an insurer are allegedly more remote.

We do not feel that the use of interpleader should or does depend upon the existence or absence of a direct action statute. As aptly noted by Judge Wright in the *Revere* case, at page 480 of 188 F.Supp.:

"But the requirement [of Rule 22 of exposure to multiple liability as a prerequisite for interpleader] is not a strict one. Nor could it be as part of a Rule that is said to provide 'the most modern and liberal method of obtaining interpleader to be found.' [3 Moore, supra, at par. 22.04[1], p. 3007.] *The key to the clause requiring exposure to 'double or multiple liability' is in the words 'may be.' The danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice.* At least, it is settled that an insurer with limited contractual liability who faces claims in excess of his policy limits is 'exposed' within the intendment of Rule 22, [citing this court's decision in Standard Sur. & Cas. Co. v. Baker, 8 Cir., 1939, 105 F.2d 578] and we need go no further to find the requirement satisfied here." (Emphasis supplied.)

Judge Wright states further at page 480 of 188 F.Supp.:

"The present law, then, is that the only equitable ground necessary for interpleader, whether the plaintiff is a disinterested stakeholder or not, is exposure to double or multiple vexation. But, of course, this does not mean that every person threatened with a multiplicity of suits is entitled to interplead. The function of interpleader is to rescue a debtor from *undue* harassment when there are several claims made against the *same fund.*"

In the *Revere* case Judge Wright does state at pages 482–483 of 188 F.Supp.:

"\* \* \* But, in any event, prematurity [i. e., in seeking interpleader for unliquidated tort claims] is no defense under the peculiar Louisiana law which allows a direct action against the automobile liability insurer."

A reading of Judge Wright's entire opinion, however, clearly shows the mention of the Louisiana direct action statute to be surplusage and not necessary to the decision in that case. For example, just prior to the reference to the direct action statute it is stated at page 482 of 188 F.Supp.:

"\* \* \* Indeed, under the 'may be exposed' clause of Rule 22 and the 'may claim' clause of the Interpleader Act, it would not seem to matter how remote the danger might be."

Professor Chaffee, in The Federal Interpleader Act of 1936:II, supra, says at page 1166 of 45 Yale L.J. that:

"\* \* \* a bill in the nature of interpleader should lie even before any judgment. It is sufficient for the court to assure itself that the danger of multiplicity of suits is genuinely present. The seriousness of the accident and the obvious good faith of the victims in seeking damages meet this requirement. The victims are 'claiming to be entitled to such (insurance) money' within paragraph (a) (i) of the Act of 1936, at least after they file suits against the assured. *It is true that the victims technically have no cause of action against the insurance company until judgment, and only against the assured till then; but substantially they are all seeking the insurance money from the start.* The

company's obligation to defend and its limited duty to pay give it a vital interest in every tort action. It is no interloper in asking a unification of the numerous tort actions brought against the assured. Its request benefits the claimants as well as itself. Instead of a haphazard looting of a fund by the first comers, a bill in the nature of interpleader filed before numerous judgments have ripened assures a fair share of the insurance money to each victim and conforms to the principle, 'Equity is equality.'" (Emphasis supplied.)

His remarks, although directed to the 1936 interpleader act, show that the presence or non-presence of a direct action statute certainly is far from conclusive in any interpleader action, including one under Rule 22.

We find unpersuasive the case of National Cas. Co. v. Insurance Co. of North America, N.D.Ohio, 1964, 230 F.Supp. 617, 620, wherein it is stated, without cogent reasons, that the direct action statute was a crucial factor in *Revere*. In Commercial Union Ins. Co. v. Adams, supra, a case coming out shortly after *National Cas. Co.*, it is noted very simply at page 863 of 231 F.Supp. that *Revere* clearly stands for the proposition that:

> "* * * interpleader may be resorted to by an insurance carrier when the adverse claims are unliquidated tort claims against its assured."

See, also, Standard Sur. & Cas. Co. v. Baker, 8 Cir., 1939, 105 F.2d 578. In *Adams,* no mention is made of the direct action statute involved in *Revere*. No such statute is present in *Adams*, yet interpleader is permitted therein.

Clearly, then, the existence of a direct action statute is not conclusive as to whether or not interpleader will lie. Herein appellants have already been exposed to two claims totalling over $25,000 in the Arkansas state courts. Further, the District Court found—conservatively, we think—that appellants will eventually have to face up to at least 16 additional claims and $25,000 of additional potential liability over and above the current amounts being sought in the state courts. Even the existing state court actions would more than exhaust policy coverages if Sheffield should be held liable for the crop spraying damages up to the extent claimed, even without additional claims being brought. Clearly, the liberal interpretation of interpleader under Rule 22 should govern in this situation to prevent appellants from facing at worst multiple liability and at best multiple vexation. The facts, as disclosed by the record, belie the District Court's reasoning that any liabilities of appellants are doubly contingent, depending on ultimate judgments being rendered against an insolvent Sheffield. The threat of multiple liability is very real and imminent and interpleader should lie herein.

The late District Judge Lemley, in Tollett v. Phoenix Assur. Co., W.D.Ark., 1956, 147 F.Supp. 597, 605, spoke of the 1948 interpleader act as follows:

> "* * * The Federal Interpleader Act, 28 U.S.C.A. § 1335, which is a remedial statute and to be liberally construed, was designed not only to protect stakeholders from double or multiple liability but also to protect them from the trouble and expense of double or multiple litigation. Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206; Metropolitan Life Insurance Co. v. Segaritis, D.C.Pa., 20 F.Supp. 739; Massachusetts Mutual Life Insurance Co. v. Weinress, D.C.Ill., 47 F.Supp. 626; and Mallonee v. Fahey, D.C.Cal., 117 F.Supp. 259."

His remarks are applicable to the very liberal Rule 22 which is involved herein. See generally the notes of the Advisory Committee on Rules following Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A. We are in accord with the statement of the Third Circuit in B. J. Van Ingen & Co. v. Connolly, 3 Cir., 1955, 225 F.2d 740, 744, when it speaks "* * * of the normal duty of a district court to

permit interpleader liberally to relieve parties of the hazards and vexations of conflicting claims against them." See, also, Bierman v. Marcus, 3 Cir., 1957, 246 F.2d 200, 203, certiorari denied, 356 U.S. 933, 78 S.Ct. 774, 2 L.Ed.2d 762. We hold interpleader to be justified in the present situation.

For reasons set out in this opinion, the judgment of the District Court is reversed and the cause is remanded with directions to reinstate appellants' complaint.

McMANUS, District Judge, concurs and emphasizes that the result is in keeping with the spirit of the Rules, in particular Rules 2, 20(a) and 22, Federal Rules of Civil Procedure, 28 U.S.C.A., which must be construed in conjunction with 28 U.S.C.A. § 1335.