**TRAVELERS INDEMNITY COMPANY**
**v.**
**GREYHOUND LINES, INC., et al.**
**Civ. A. No. 12325.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

Nov. 4, 1966.

Meredith T. Holt, Cavanaugh, Brame, Holt & Woodley, Lake Charles, La., Ben G. Sewell, McGregor, Sewell, Junell & Riggs, Houston, Tex., for Travelers Indemnity Co.

William R. Tete, Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, La., John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for Greyhound Lines, Inc.

Frank M. Bean, Bean & Manning, Houston, Tex., for All Woods Limited.

Joseph D. Jamail, Jr., Cire & Jamail, W. James Kronzer, Hill, Brown, Kronzer, Abraham, Watkins & Steely, Bradley Collins, Gripp, Will & Collins, Woody & Rosen, Houston, Tex., Chappuis & Beslin, Rayne, La., Robert B. Harbison, Altus, Okl., John Gano, Houston, Tex., Hyde, Tucker, Gano, Easterling & Brown, Dallas, Tex., James Truitt Garrett, Houston, Tex., Stephenson, Thompson & Morris, Orange, Tex., C. Arthur Rutter, Jr., Norfolk, Va., J. Clem Drewett, Lake Charles, La., Bass C. Wallace, Andrews, Kurth, Campbell & Jones, Houston, Tex., Stuart A. McClendon, New Orleans, La., E. Gordon Schaefer, Jr., New Orleans, La., George V. Baus, Adams & Reese, New Orleans, La., Arnold J. Gibbs, Baton Rouge, La., Asberry B. Butler, Jr., Houston, Tex., Thomas Malik, Malik & Huber, Reserve, La., Ruth Boren Bivin, Houston, Tex., James L. Babin, Camp, Carmouche, Palmer, Carwile, Babin & Barsh, Eugene H. Lawes, Bass & Lawes, R. W. Farrar, Jr., Hall, Raggio & Farrar, William B. Baggett, Baggett & Hawsey, C. A. King, II, J. Fred Patin, Patin & Patin, L. Carroll Fogleman and E. M. Nichols, Lake Charles, La., Carl Waldman, Beaumont, Tex., Lloyd E. Hennigan, Jr., Lake Charles, La., Lucien Bertrand, Jr., Lafayette, La., Shell, Fleming & Davis, Pensacola, Fla., for Damage Suit Plaintiffs.

## MEMORANDUM RULING ON TRAVELERS PETITION IN THE NATURE OF INTERPLEADER

HUNTER, District Judge.

On August 27, 1965, a tragic highway accident occurred near Vinton, Louisiana. A Chevrolet truck collided with a Greyhound bus carrying 46 passengers. Twelve persons were killed and others were injured, some very seriously. The Truck was owned and, at the time of the accident, was being operated by All Woods, Ltd., a limited Texas partnership. Subsequently, seventeen suits were filed in Texas and nineteen in Louisiana. The total damage alleged exceeds $7,000,000. The Texas suits name as defendants Greyhound and All Woods, the owner of the truck. Louisiana claimants are suing Greyhound, All Woods, and its liability insurer, Travelers.[1] In practically all instances Greyhound has filed a third party claim against All Woods.

On September 23, 1966, Travelers filed this petition "in the nature of interpleader," (28 U.S.C.A. § 1335(a)) citing as defendants all potential claimants, including All Woods, Greyhound, and the damage suit plaintiffs. Travelers asks that all of these parties be directed to assert their claims here, and has deposited a bond in the amount of $325,000, representing the face amount of its policy to All Woods. Jurisdiction is sought solely on 28 U.S.C.A. § 1335, venue under 1397, and process under 2361. We have some difficulty in divining the exact na-

---

1. Thomas Jefferson Blankenship, the driver of the bus, has been added as a defendant by some of the claimants.

ture of the relief sought. Does Travelers seek to have the damage claimants enjoined from prosecuting their pending suits against Greyhound and All Woods? A literal reading of the prayer gives us the picture that Travelers merely asks that this fund be distributed to the extent needed to satisfy the claims of the defendants here, subject to being reclaimed upon a finding of non-liability on the part of its assured, All Woods. Petitions for interpleader should be liberally construed. An analysis of the petition, together with briefs, oral argument, and independent inquiry in open court, leaves us with the definite impression that Travelers primarily seeks an injunction ordering all claimants to cease and desist from prosecuting their cases elsewhere, not only against it but also against Greyhound and All Woods. Secondly, if this relief is not forthcoming, Travelers desires an order enjoining the further prosecution of any suits elsewhere against its assured and itself. Thirdly, if that relief is not forthcoming, it would like relief for itself.

On September 26, 1966, all claimants were instructed to show cause on or before October 24, 1966, why petitioner should not be granted relief as prayed for. A hearing was held on the latter date, extensive arguments were presented, and numerous briefs were filed. The only question presented at this stage of this proceeding is whether interpleader is available to the insurer, and whether or not the damage suit claimants should be enjoined from prosecuting their pending actions against All Woods and Greyhound, as well as Travelers. Greyhound and All Woods, through counsel, have expressed their concurrence to the effect that the interpleader should be granted, provided it prohibits suit elsewhere against them, too.

2. On September 22, 1965, Greyhound instituted suit in Calcasieu Parish, Louisiana. Defendants in that suit were All Woods, Travelers, the driver of the Greyhound bus, and all potential damage suit claimants. That petition sought a declaratory judgment determining the rights, obligations and status of the re-

The damage suit claimants, in general, are vociferous in their opposition. Mr. Lawes, representing several of those who have filed suit in Louisiana, expressed his sentiments in more or less these words:

"My people were sitting on the bus, riding along, minding their own business; they were injured, and this is the second time they have been sued! And that is all they were doing—riding on a bus. We think we are entitled to some equitable considerations, too. We think we are entitled to pursue our individual cases in the individual forums that we have chosen, and we feel no real problems will be involved by proceeding in that manner."[2]

The Texas claimants emphasize that they are not suing Travelers. They assert that the Texas actions are Texas law suits involving only Texans; that the insurance contract between Travelers and All Woods, as well as the contract of transportation, were entered into in Texas. Texas counsel have filed motions to quash service on their clients, alleging the absence of personal service. These motions are not pegged upon an insufficiency of summons, but concern amenability to process. They have two prongs: (1) The Interpleader Act as it is undertaken to be utilized here does not pass constitutional muster; (2) These Texans are not "claimants" to the "fund" within the meaning of the Interpleader Act.

Section 1335 of Title 28 U.S.C.A. provides in pertinent part that:

"The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader * * * if (1) Two or more adverse claimants, * * * are claiming or may claim to be entitled * * * to any one or more of the benefits arising by virtue of any * * * policy * * *."

spective persons and parties. Exceptions were filed and subsequently sustained by the State Court. Specifically, it was held that the Declaratory Judgment Act of Louisiana was not applicable, and that Louisiana courts did not have jurisdiction over the non-resident defendants.

The threshold question is whether or not the damage suit plaintiffs are "claimants" within the jurisdictional requirements of the statute. Other courts have dealt with substantially the same question but have resolved it differently.[3] Certiorari was granted in *Tashire* on October 11, 1966, and it is apparent that this issue will soon be resolved by the United States Supreme Court. No one suggests that decision here be deferred, pending the outcome of *Tashire*. Without further adieu, we declare our concurrence with those courts holding that interpleader may be resorted to by an insurance carrier where, as here, the adverse claims are unliquidated tort claims against its assured. The key to the clause requiring exposure is in the words "may claim to be." The danger need not be immediate; the possibility will suffice.

Texas claimants concede that if an actual fund has been deposited and the proceeding had been in the nature of a strict bill, quasi in rem jurisdiction could have been obtained over non-residents under 2361. But, the argument is advanced that where, as here, liability is denied, the jurisdiction sought to be obtained is purely in personam, and that the Texas citizens cannot be subjected to personal judgment because of the limitations of the due process clause of the Fifth Amendment. Over and above this constitutional attack another is made, namely, "that the Interpleader Act and its implementing statutes as sought to be effected on the instant case are unconstitutional as being incompatible with the constitutional mandate of Article III, Section 2, Clause 1 of the Constitution." The Supreme Court of the United States, in Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939), held that even though the constitutional language limits the judicial power to controversies wholly between citizens of different states, this requirement was satisfied where the interpleading party showed his disinterestedness as between the claimants by depositing the stock in court and disclaiming any interest in it. *Treinies* is easily differentiated from the instant case where Travelers admits by its complaint that it is not a disinterested stakeholder, and is filing a complaint in the nature of an interpleader where it denies liability altogether. It is argued that here it is evident from the pleadings and argument that the actual controversy is between Greyhound and All Woods on the one hand and the passengers on the Greyhound bus on the other. In *Tashire* the Ninth Circuit declined to pass upon these contentions because of its determination that persons situated as these defendants are not "claimants" under 1335. If—and the if may be a big one—*Tashire* is reversed in that particular, then these questions, too, may soon be resolved by the Supreme Court. We deem it not necessary to pass on these constitutional issues because the relief we envision here will in no way impede these Texans from having the personal unlimited liability of the tort feasors determined in the forum of their choice. Has Congress actually provided (in the Interpleader statute) for nationwide service so as to enlarge the jurisdiction of a federal district court to adjudicate the rights of non-residents going beyond a precisely deposited fund, concerning which the interpleader has an adverse interest? Suffice it to say that if statutory construction were simply a question of simple words the answer would have to be in the negative, and 1335 jurisdiction is limited to the fund actually

---

3. Holding that persons in a similar category were not claimants are the cases of: Tashire v. State Farm Fire & Casualty Co., 363 F.2d 7 (9 Cir., 1966); National Casualty Co. v. Insurance Company of North America, 230 F.Supp. 617, 619 (N.D.Ohio, 1964); American Indemnity Co. v. Hale, 71 F.Supp. 529 (W.D.Mo., 1947). Standing squarely to the contrary: Pan American Fire & Casualty Co. v. Revere, 188 F.Supp. 474 (E.D.La., 1960); Commercial Union Ins. Co. of N. Y. v. Adams, 231 F.Supp. 860 (S.D.Ind.1964); Underwriters at Lloyds v. Nichols, 363 F.2d 357 (8 Cir., 1966). The Louisiana Direct Action Statute is of little import here. The Texas plaintiffs did not sue Travelers and the delay for filing suit against Travelers in Louisiana has elapsed.

deposited. See Onyx Refining Co. v. Evans Production Corp., 182 F.Supp. 252 (S.D.Tex., 1959).

■ We have carefully considered the language and the history of the Interpleader statute and find nothing therein which would justify a decree ordering the damage suit claimants to desist from prosecuting their actions elsewhere against Greyhound. Is there anything in the statute, or in equity, which would justify this Court in ordering the damage suit claimants to cease and desist from prosecuting their state court claims against All Woods? We think not. There is no persuasive authority giving to us the right to stay and enjoin proceedings and prosecution of suits against persons not entitled to limit their liability. Except for the decisions of the United States District Court in Commercial Union Insurance Co. of New York v. Adams, 231 F.Supp. 860 (S.D.Ind., 1964) and *Tashire*, no case has been found in which it was sought to utilize the benefits of Interpleader so as to involve multiple tort feasors. In *Adams*, which was in the nature of a "strict bill," all of the insurers, both primary and excess carriers, tendered their coverage into concourse. No such offering has been made here. In *Tashire*, of course, the Ninth Circuit dissolved the restraint entirely.

■ An action in the nature of interpleader is equitable in nature and controlled by equitable principles. State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); Austin v. Texas-Ohio Gas Co., 218 F.2d 739 (5 Cir., 1955); Holcomb v. Aetna Life Insurance Co., 228 F.2d 75 (10 Cir., 1955), cert. denied 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853; Elliott v. Federal Home Loan Bank, 233 F.Supp. 578 (D.C. Calif., 1964). Various counsel for plaintiffs argue that if there ever was a situation in which the equitable principle of laches and stale demand should be applied it is here. It is argued that the coverage by Travelers is minimal in comparison to the entire controversy, and that there is no valid reason tendered for

the long delay (13 months) in instituting this proceeding. It would serve no useful purpose to add pages to this memorandum by discussing the various other equitable arguments advanced by counsel for the damage suit claimants in an endeavor to preclude this Court from ordering them to desist from going forward with their actions against joint tort feasors with unlimited liability. Turning to the particular aspects of this case, we are, however, confronted with an extremely strong consideration which militates against applicant, i. e., Travelers, who admittedly has an exposure of only $325,-000 would control other state and federal proceedings in which claims exceed $7,-000,000. Conceding the proposition that some of the suits have been filed for more than their judgment value, the fact nevertheless remains that in this accident twelve people died and some thirty other people were injured, most of them allegedly seriously. Unquestionably, the eventual damages from this tragedy, if there is liability, will far exceed Travelers' policy limits. We feel that to allow a party such as Travelers in this situation, who has so little to offer in the way of eventual settlement, to control these proceedings would be highly inequitable to those parties who have actively pursued their cases elsewhere. The fact that a defendant against whom multiple claims are or may be lodged is covered by insurance should not operate to oust jurisdiction of the state courts over suits against other joint tort feasors. To do so would defeat the jurisdiction of state courts merely because one of the parties to such litigation happens to have liability insurance. The position of Travelers is that they are entitled to interpleader, as a matter of right, whenever multiple claims against their assured are in excess of their coverage, and that when such interpleader is filed all actions against its assured, as well as against other joint tort feasors, must be tried in the federal district in which it decides to file its interpleader action. The equitable remedy of interpleader could not have been devised by the chancellor and codified by the Con-

gress to bring about such a result.[4] The short of it is that this, not being a controversy wholly between citizens of different states, jurisdiction is only that given by Section 1335 and is limited to the fund actually deposited. Onyx Refining Co. v. Evans Production Corp., 182 F.Supp. 252 (D.C.Tex., 1959); Metropolitan Life Insurance Co. v. Enright, 231 F.Supp. 275 (S.D.Calif., 1964); Metropolitan Life Insurance Co. v. Chase, 294 F.2d 500 (3 Cir., 1961); Stitzel-Weller Distillery v. Norman, 39 F.Supp. 182 (W.D.Ky., 1941); Hagan v. Central Avenue Dairy, 180 F.2d 502, 17 A.L.R.2d 735 (9 Cir., 1950).

Travelers is entitled to deposit its fund (or bond) and have this Court distribute it proportionately to the extent necessary or possible to satisfy any lawful obligations against the fund, subject to the fund being reclaimed upon a finding of non-liability. This Court has ample resources to assure, as appropriate, that it retain exclusive control and power over this fund, and this we can do without depriving the claimants of their valuable right to have the personal unlimited liability of Greyhound and All Woods determined in the forum of their choice. This can be effectively accomplished by enjoining execution against Travelers under any judgment rendered against it until the actions elsewhere have been finally determined and the claims of all are liquidated by judgment.

It could be argued that this same result could best be accomplished by enjoining all suits against Travelers. What would this accomplish? In my judgment, nothing. Travelers is not sued in Texas, and

unless one assumed that it will exercise bad faith concerning the handling and processing of the various claims, the only conceivable exposure in excess of the limits of coverage would be the increased cost of defense. This is not a controlling principle, because the policy requires Travelers to defend the actions brought against its insured. This duty is entirely independent of the obligation to pay, has no relation to the probability of recovery, and does not form the basis of a claim of "multiple vexation." This duty cannot be avoided by an insurer by merely depositing its coverage in the registry of the Court.[5]

## CONCLUSION

The various damage suit claimants and cross-complainants are free to pursue their respective actions. However, no judgment is to be executed against Travelers as to the $325,000 policy involved in this litigation except through petition in this Court in this proceeding. That does leave open the question of how long this restriction is to apply. It is our intention to continue this stay of execution against Travelers as to this fund until the other court proceedings have been finalized. Then we would, if All Woods and/or Travelers are absolved from liability, permit Travelers to reclaim its $325,000. If, on the other hand, judgments are rendered against Travelers, either directly or through All Woods' coverage, we would proportionately divide the $325,000 among the claimants as their interest may appear. If Greyhound establishes its rights by way of contribution and/or indemnity in the retained "fund", then its proportionate interest

---

4. This is especially true, they argue, where the other joint tort feasors file cross-claims.

5. Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5 Cir., Tex., 1949); American Casualty Co. of Reading, Pa. v. Howard, 187 F.2d 322 (4 Cir., 1951); Smith v. Insurance Company of State of Pennsylvania, 161 So.2d 903 (La.App., 1964). See also 8 Appleman Insurance Law and Practice, Para. 4685. In the Commercial Union Ins. Co. case (S.D.Ind., supra)

the insurance company was relieved of its duty to defend, but there, relief was specifically conditioned upon the terms of the policy and upon the fact that the insurance company admitted liability and coverage. It is our understanding that many of the 1966 policies of insurance contain a provision specifically allowing an insurer to be relieved of his obligation to defend upon the surrender of the entire amount of his coverage. No such provision is present here.

could be equitably divided along with other claimants proceeding directly against the fund at the time final judgments are obtained. This relief would protect Travelers against any dangers incident to paying off the first final judgment, and it further avoids a race to final judgment among the various "claimants" to the fund.