**DAKOTA LIVESTOCK COMPANY and Farmers Union Marketing & Processing Association, Appellants,**

v.

**Gary KEIM et al., Appellees.**

**No. 76-1823.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1976.

Decided April 13, 1977.

James H. Turk, Mankato, Minn., for appellants; Bailey W. Blethen, Mankato, Minn., on brief.

Brian F. Leonard, St. Paul, Minn., for appellees.

Gale E. Fisher, Sioux Falls, S. D., filed brief for appellee, Arthur Zurcher d/b/a A & Z Cattle Co.

Before STEPHENSON and HENLEY, Circuit Judges, and MEREDITH,* District Judge.

HENLEY, Circuit Judge.

Plaintiffs-appellants, Dakota Livestock Company (Dakota) and Farmers Union Marketing & Processing Association (Farmers), appeal from an order of the United States District Court for the District of Minnesota dismissing with prejudice an interpleader action commenced by plaintiffs against a number of defendants and directing that the sums of money deposited by the respective plaintiffs in the registry of the court be turned over summarily to the defendant Brian F. Leonard, trustee of the estates of the defendants, Gary Keim, John Keim, d/b/a John Keim & Sons, and G–M Grain Company, Inc. (G–M), bankrupts.

Plaintiffs predicated their claim of federal jurisdiction on the federal interpleader statute, 28 U.S.C. § 1335. That statute provides in substance that a stakeholder may maintain in a federal district court a bill of interpleader or in the nature of interpleader if the amount at stake is in excess of $500.00, and if two or more adverse claimants of the fund or property in question are of diverse citizenship as that term is defined in 28 U.S.C. § 1332. The statute also provides that the conflicting claims do

---

* The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

not have to have a common origin or to be identical; it is sufficient if they are adverse to and independent of each other.

There are ten defendants in the case. All but two of them are for jurisdictional purposes citizens of Minnesota. One of those two defendants is Arthur Zurcher of Rugby, North Dakota, who does business as A & Z Cattle Company; the other is Olsen-Frankman Livestock Marketing Service, Inc. (Olsen-Frankman) which jurisdictionally is a citizen of South Dakota, but which has no interest in the moneys deposited by the plaintiffs in the registry of the district court or any claim against either plaintiff.

Both plaintiffs are public auctioneers of livestock. Dakota is a South Dakota corporation with its place of business in Sioux Falls in that State. Farmers is a Minnesota corporation which operates in South Saint Paul, Minnesota.

In late July, 1975 Dakota sold certain cattle that had been consigned to it by the Citizens National Bank of Madelia, Minnesota, one of the defendants herein; those cattle had originally belonged to the defendant, Zurcher, and he had sold them to either John Keim & Sons or to G–M. He has never been paid for the cattle. The cattle were delivered originally by Zurcher to Olsen-Frankman, a cattle broker, and had been placed on the lot of John Keim in Madelia. They were taken over by the Bank under a financing statement evidencing an obligation of G–M to the Bank. The net proceeds of the sale of those cattle amounted to about $54,000.00.

At about the same time as that at which Dakota sold the cattle just mentioned, Farmers sold a substantial number of cattle which had been consigned to it by or on behalf of the Keim interests.[1] Those may or may not have included animals that the Keims had acquired from Zurcher and for which he had not been paid.[2] The net proceeds of the sales effected by Farmers totalled somewhat more than $24,000.00.

Immediately prior to the filing of this suit on April 19, 1976 the net proceeds of the sales that have been mentioned were still in the hands of the respective plaintiffs. The reason for the retention of the proceeds by the plaintiffs was that shortly after the sales were made, plaintiffs learned of the probable insolvency of the Keims and their corporation and that there were conflicting claims to the moneys in the hands of the plaintiffs.

On August 12, 1975 Zurcher filed a suit in federal court in Minnesota against the Bank and John Keim seeking to recover from them about $96,000.00 on a theory of fraud, deceit and conversion. On August 20, 1975 Zurcher filed a suit against Dakota in the Circuit Court of Minnehaha County, South Dakota, alleging that Dakota was liable to him as a converter of the cattle that had been consigned to Dakota by the Bank. On the same day involuntary petitions in bankruptcy were filed against Gary Keim, John Keim and G–M in the federal district court in Minnesota. They were adjudicated bankrupts in November, 1975, and the defendant, Leonard, was named trustee in January, 1976.

In their complaint in interpleader plaintiffs alleged that the funds in their hands were being claimed respectively by Zurcher of North Dakota, and by the Bank, the Trustee and certain other parties, all citizens of Minnesota. Contemporaneously with the filing of their complaint plaintiffs paid into the registry of the district court the sales proceeds remaining in their hands. Plaintiffs disclaimed any interest in the funds and sought appropriate relief in interpleader including injunctive relief to protect them from litigation in other courts involving the same sums of money.

1. G–M is a closely held corporation. John Keim is its President and Gary Keim is its Vice President. Apart from the corporation, John Keim had a personal cattle operation known as John Keim & Sons.

2. Zurcher originally parted with the cattle that were ultimately sold by Dakota on July 17, 1975. He had made earlier sales to John Keim, and he insists that all of his sales were made to that individual and that he never sold any cattle to G–M.

Zurcher moved to dismiss the complaint as to him for alleged failure to state a claim upon which relief could be granted. The Trustee moved for dismissal on the ground that the controversies about the funds were within the exclusive jurisdiction of the bankruptcy court and were not within the jurisdiction of the interpleader court.[3] Plaintiffs moved for a preliminary injunction restraining litigation in other courts involving the sums that had been deposited in the registry.

On July 16, 1976 the district court held a hearing on the motions pending before it. Plaintiffs, the Trustee, the Bank and certain other parties appeared; the motions were argued and submitted. Apparently, in the course of the hearing Zurcher through his attorneys asserted that he was not seeking to recover any part of the funds that had been deposited in the registry, and that he was simply standing on his conversion suit against Dakota that was pending in the South Dakota state court. The record does not indicate that he asserted any claim against Farmers.

On August 26 the district court filed findings of fact and conclusions of law and entered the order from which plaintiffs appeal. Evidently accepting the assertions of Zurcher, the district court found that the funds in court were not being claimed adversely by claimants of diverse citizenship, and that the district court had no jurisdiction of the interpleader suit. Going further, the district court found that as of November, 1975 the funds in question were in the constructive possession of the bankrupts, and ordered that they be turned over by the clerk of the district court to the Trustee to be held in a segregated interest bearing account.

After notice of appeal had been filed, the plaintiffs moved for injunctive relief pending the appeal. That motion was granted, and in that connection the Trustee was enjoined from disbursing any of the funds that had been turned over to him until the appeal should be disposed of, and Zurcher was enjoined pending the appeal from proceeding further in his state court action. However, in general the bankruptcy proceedings involving the Keims and G–M were permitted to go forward.

For reversal, plaintiffs contend that the district court erred in finding that there was an absence of what may be called "claimant diversity" and dismissing the complaint on that basis. Alternatively, plaintiffs say that if the district court was correct in its ruling that it had no jurisdiction of the interpleader suit, it erred in ordering the deposited funds turned over to the Trustee rather than returned to the respective plaintiffs.

Zurcher and the Trustee seek to uphold the ruling of the district court. Both contend that Zurcher was not an adverse claimant within the meaning of § 1335, and the Trustee renews here his contention that from the beginning the controversy was within the exclusive jurisdiction of the bankruptcy court.

We think that the contention of the Trustee last mentioned presupposes that Zurcher was not and is not an adverse claimant. In our view if a party is in the actual possession of money or property the ownership of which is disputed, his right to interplead the funds is not affected by the fact that one of the claimants is a trustee in bankruptcy who contends that the funds belong to the estate that he is administering. Cf. *Massachusetts Mut. Life Ins. Co. v. Grossman*, 4 F.Supp. 990 (S.D.N.Y.1933).

While plaintiffs have seen fit to join their claims for relief in one complaint, we actually have two separate claims and two separate funds. And there is some difference between the two claims since Zurcher has not yet asserted any claim of liability on the part of Farmers.

---

**3.** Both the bankruptcy court and the interpleader court were the United States District Court for the District of Minnesota. No reminder should be necessary that the "bankruptcy court" of a given district is simply an arm of the district court of that district performing certain specialized functions prescribed by the Bankruptcy Act.

The requirement of § 1335 that there be adverse claimants of diverse citizenship is jurisdictional, and if claimant diversity hinges upon the citizenship of one party, and if that party is not an adverse claimant, the interpleader court has no jurisdiction and must dismiss the complaint. Here, jurisdiction depends upon the status of Zurcher as an adverse claimant.

The interpleader statute and Fed.R. Civ.P. 22, which permits federal interpleader in certain cases not covered by the statute, are designed to protect stakeholders not only from double or plural liability but also from duality or plurality of suits, and both the statute and the rule are to be construed liberally. *Gaines v. Sunray Oil Co.*, 539 F.2d 1136 (8th Cir. 1976); *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357 (8th Cir. 1966).

The argument that Zurcher is not an adverse claimant with respect to the funds deposited by the plaintiffs actually invokes the historical rule that interpleader would not lie where the stakeholder was independently liable to one of the claimants and would not be relieved of liability to that claimant even if the fund was awarded to the other claimant. That rule is condemned as obsolete in 7 Wright & Miller, Federal Practice & Procedure § 1706 (1972), and was rejected in the recent case of *Hebel v. Ebersole*, 543 F.2d 14 (7th Cir. 1976), a case that closely resembled this one. We also reject it.

It frequently happens that a public auctioneer, acting in good faith and in the ordinary course of business, sells property that is consigned to him and is later faced with a claim that the consignor had no right to cause the property to be sold, and that the auctioneer is liable as a converter. Such a claim can present a real problem to an auctioneer of cattle consigned to a public sales barn because cattle so consigned have to be sold quickly, and the auctioneer has little opportunity to inquire into the consignor's title or right to have the cattle sold or as to the existence of liens covering the cattle. Some jurisdictions afford the auctioneer some protection when he has acted in good faith and purely as an agent; in other jurisdictions the liability of the auctioneer as converter may be absolute. *See* in this connection *United States v. Chappell Livestock Auction, Inc.*, 523 F.2d 840 (8th Cir. 1975).

If the auctioneer is sued after he has paid over the proceeds of the sale, he can do nothing but defend the case and seek indemnity from the consignor, assuming that the latter is solvent. If the auctioneer learns of the claim and of the possibility of a conversion suit, or if he is sued, while the proceeds of the sale are still in his hands, he may seek to protect himself by filing an interpleader suit and depositing the funds in the registry of the interpleader court.

In *Hebel v. Ebersole, supra*, an auctioneer had sold several hundred head of cattle that had been consigned to it by a single consignor and had paid the proceeds of the sale over to the consignor by means of two checks, one of which the consignor endorsed and negotiated to a third party. Confronted with claims of the original owners of the cattle that they had not been paid for the animals by the consignor, the auctioneer effectively stopped payment on both checks and filed its interpleader suit in federal court. The original owners of the cattle, the holder of the negotiated check, and a bank all filed answers and counterclaims; the counterclaims included claims for damages for conversion.

The district court reserved ruling on the issues raised by the counterclaims and proceeded to adjudicate the rights of the parties to the funds that had been deposited. There was an appeal in the course of which the court of appeals on its own motion raised the question of the jurisdiction of the district court to entertain the action in view of the fact that some of the claimants were asserting independent liability on the part of the auctioneer. The court of appeals held that jurisdiction existed in spite of the existence of independent stakeholder liability. The court felt that such liability is not a bar to interpleader as long as the necessary adversity between claimants exists in some fashion, and that ordinarily such ad-

versity is "based on the risk of double payment of a single liability." 543 F.2d at 17.

As indicated, we agree with the result reached in that case. Under the Federal Rules of Civil Procedure, the rights of the claimant having an independent claim against the stakeholder can be protected adequately within the framework of the interpleader action, particularly since it now seems to be settled that Rule 13 which provides for compulsory and permissive counterclaims is applicable to interpleader suits. *See* in addition to *Hebel v. Ebersole, supra; Liberty Nat'l Bank & Trust Co. of Oklahoma City v. Acme Tool Div. of the Rucker Co.,* 540 F.2d 1375 (10th Cir. 1976); *Bell v. Nutmeg Airways Corp.,* 66 F.R.D. 1 (D.Conn.1975); 7 Wright & Miller, *supra,* § 1715 at 448–49. Such an approach serves the purpose of § 1335 and Rule 22 by protecting a stakeholder who may be subject to independent liability from double litigation even if not from double liability.

What has been said thus far is applicable to the claims for relief of both Dakota and Farmers. It now becomes desirable, however, to discuss the two claims separately because the situation that exists with respect to Dakota is not precisely the same as that which exists with respect to Farmers.

The question of whether Dakota is liable to Zurcher as a converter involves the basic question of whether the Bank had a right to take the cattle sold by Zurcher from the Keim lot and cause them to be sold by Dakota. If the Bank had that right, then it is hard to see how Dakota could be held liable to Zurcher in conversion. If the Bank had no such right, then under South Dakota law Dakota may or may not be liable to Zurcher. We express no opinion as to that question.

We think that Dakota was entitled to have the question of the Bank's right to have the cattle sold, and the question of Dakota's liability to Zurcher, if the Bank had no right to have the cattle sold, litigated in the interpleader court, and that the district court erred in dismissing Dakota's complaint.

Zurcher is seeking compensation for the loss of his cattle which loss resulted ultimately from the sale of the cattle by Dakota at the instigation of the Bank. That Zurcher is not seeking to be paid out of the particular fund in the registry of the district court is beside the point. The money that was deposited in court represents the proceeds of Dakota's sale of the cattle and in a sense stands in place of the cattle. We do not think that Zurcher can in effect surrender that fund to the Bank or to the Trustee and thus avoid controversy with them while at the same time reserving his claim against Dakota by the simple device of turning his back on that particular fund. It is obvious that Zurcher can afford to take that action only because he feels that he can safely rely on the general assets of Dakota to satisfy any judgment that he may ultimately obtain against it. If Zurcher can thus avoid the jurisdiction of the interpleader court, so perhaps can any other defendant who has an independent claim against a solvent stakeholder.

We desire to emphasize that our holding that the district court had jurisdiction of Dakota's claim for relief does not prevent Zurcher from pressing his claim for conversion in that court, nor does it necessarily limit his damages to the amount that Dakota has deposited. He can file an appropriate counterclaim, and since more than $10,000.00 is involved and since Zurcher is a citizen of North Dakota while Dakota is a South Dakota corporation, it makes no difference whether his counterclaim is considered compulsory or whether it is considered permissive.

It does not necessarily follow from our conclusion that the district court had jurisdiction of Dakota's claim for relief that jurisdiction also existed with respect to the claim of Farmers.

As to Farmers the jurisdictional problem does not arise from Zurcher's assertion that he has no interest in the money deposited by Farmers but from the fact that it is not clear whether Zurcher is asserting any claim against Farmers. As has been seen, he has not done so yet, and in that connec-

**1308**

tion we observe that Zurcher has never been called upon to answer the complaint of Farmers. The fund deposited by Farmers may or may not represent in part the proceeds of one or more sales by Farmers of cattle that belonged to Zurcher originally and for which he has never been paid. If not, then Zurcher has no claim against Farmers.

 Other jurisdictional requirements being present, § 1335 gives jurisdiction to a district court if there are two or more claimants of diverse citizenship who "are claiming or may claim" an interest in the money or property in controversy. Thus, the jurisdiction extends to potential claims as well as to claims that have actually been made when suit is filed. Although Zurcher has not as yet asserted any liability on the part of Farmers, he has not admitted that no such liability exists, and it does not appear that an assertion of such a claim at this time or even somewhat later would be barred by limitations.

In such circumstances we conclude that the judgment of the district court must be reversed as to Farmers as well as to Dakota. If in the course of further proceedings it develops that Zurcher is not asserting any claim against Farmers based on cattle sales the proceeds of which Farmers deposited in the registry of the district court, the district court will be free to dismiss the complaint of Farmers again.

The result here reached does not conflict with our holding in *Gaines v. Sunray Oil Co., supra.* In that case we upheld the action of the district court in dismissing from the case a group of defendants who had disclaimed any interest in the fund that had been deposited in court. However, the defendants in that case with respect to whom the action was dismissed based their claims on transactions entirely separate and distinct from the transactions that had produced the deposited fund. Here, the funds deposited in the district court were produced by the very acts of the plaintiffs on which Zurcher's claim against Dakota and his potential claim against Farmers are based.

The claim of the Trustee that the entire controversy has always been within the exclusive jurisdiction of the bankruptcy court does not survive our determination that Zurcher was and is an adverse claimant.

The judgment of the district court is reversed. The cause is remanded to the district court with directions to reinstate the complaint as to both plaintiffs, to cause the funds in question to be returned to the registry of the district court, to grant appropriate injunctive relief to the plaintiffs pendente lite, and to conduct such further proceedings as are not inconsistent with this opinion.