AETNA CASUALTY AND SURETY
COMPANY et al., Plaintiffs,

v.

Donald AHRENS et al., Defendants.

Civ. A. No. 74–H–1288.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 2, 1975.

Supplemental Memorandum and
Order May 6, 1976.

James B. Sales, Thomas P. Sartwelle, Fulbright & Crooker, Houston, Tex., for plaintiff Aetna.

Max Jennings, Clawson & Jennings, Houston, Tex., for International Ins. and Dutchman Seafood.

William A. Harrison, Ross, Griggs & Harrison, Houston, Tex., for Allstar Ins. and Eddie's Oysters.

Tom Fillion, Farr & Fillion, Houston, Tex., for Angelo's.

Don Karotkin, Houston, Tex., for Robert H. Burroughs.

Michael Perrin, Fisher, Roch & Gallager, Houston, Tex., for Donald, Hazel and K. J. Ahrens, A. B. and Randy Alexander, George Allen, Charlotte Faye Fowley and Thomas Capo, Robert E. Looney, Waldo Luedemann, JoAnn Northcutt, John Peveto, John Pierce, Johnny and Patricia Sherman, D. H. and Larke Shuerbert and T. A. Stojanik.

Dale Friend, Kronzer, Abraham & Watkins, Houston, Tex., for Audrey and Paul Foster, Dolores and Kerry Irwin, Mark McDonald, Richard Pregeant, Terry W. Riley and Jill Tribe.

Irving H. Weissman, Houston, Tex., for Bobby Warren Long.

Jarrold Glazer, Lohmann & Glazer, Houston, Tex., for Wayne Liles and William Marks.

Jim Vratis, Wm. C. Meyer, Houston, Tex., for Michael Stanley.

John Segelquist, Houston, Tex., for Russell Kirchner, William E. Thomas and Malcolm Young.

Wm. G. Eyres, Kagay, Turner & Eyres, Dallas, Tex., for Wayne Liles.

Donald Maierson, Kahn & Maierson, Houston, Tex., for Joseph Cole, Alan Joseph Cooper and William Marks.

Robert L. Sharp, Jr., Houston, Tex., for Darwin Starling.

Donald R. Hallmark, Boswell, O'Toole, Davis & Pickering, Houston, Tex., for Ralph Schwegman.

Thomas R. Beech, Houston, Tex., for Jack and Lucy Roth.

Jarrold A. Glazer, Houston, Tex., for Malcolm Martin.

Bryan D. Coleman, Houston, Tex., for Keith D. deFehr and Ronda Giannukos.

Dan C. Rhodes, Houston, Tex., for George Pasek, John Pierce and James R. Russell.

Hamilton Schrauff, pro se.

Harold Lloyd, Lloyd & Hoppess, Inc., Houston, Tex., for Diann Thomason and Ken Wylie.

Joe W. Steelman, Houston, Tex., for Edith M. Senegal.

J. Eugene Clements, Sewell, Junell & Riggs, Houston, Tex., for Helen Greenwood.

Joe L. Draughn, Draughn & Craig, Houston, Tex., for Arthurene and David Huntington.

Marvin B. Peterson, Combs & Archer, Houston, Tex., for George and James Hogan and Jerry Pancherz.

Virgil H. Barfield, Gilleland & Barfield, Houston, Tex., for Richard R. Gillespie.

W. Dan Myers, Dearman, Myers & Brown, Houston, Tex., for David Esbeck, Robert Pierce and Frank Tucker.

Joe G. Roady, Cox, Pakenham & Roady, Houston, Tex., for Lum Twillingerr.

Andrew L. Todesco, Miller, Gann & Perdue, Houston, Tex., for Rachel Gaskin and William J. Neill.

Willlam G. Nedd, Tynes, Michalek, Nedd & Riepen, Houston, Tex., for Charles W. Dent, III and Roger Jasso.

E. E. Christensen, Houston, Tex., for Donald L. Russo.

Harry S. Jones, Bellaire, Tex., for Jack Domec and Harlon E. Martin, Jr.

Anson D. Phipps, Lucas & Hudson, Houston, Tex., for Michael Frederik Holm, Jim Kenamore, Tom Kiger and Elizabeth Pell.

Horace F. Brown, Brown & Haden, Houston, Tex., for Alan Joseph Cooper and Andrew Perla.

George M. Kuhn, Dickson & Associates, Inc., Houston, Tex., for John A. Lothman.

Barry Allan Brown, Schlanger, Cook, Cohn & Mills, Houston, Tex., for Robert Parr.

Lawrence L. Lay, pro se.

M. W. Wade, Jr., pro se.

Donald D. Lusk, McDaniel, Hall, Parsons & Conerly, Birmingham, Ala., for N. G. and Mrs. W. G. Wynn.

John W. Turner, Miller, Gann & Perdue, Houston, Tex., for Delano Austin, Russel E. Hanson, Carl L. and JoAnn Northcutt and Sara Paggi.

William Amaimo, Houston, Tex., for Joann Ybarra and Tony Tbarra.

Raymond F. Burgert, Jr., W. D. Bonham, Bonham, Carrington & Fox, Houston, Tex., for Ralph Carlson and R. E. McDaniel.

Jack C. Ogg, Houston, Tex., for Joe Wiatt.

Charles H. Morgan, Houston, Tex., for Robert Williams.

John L. Moore, Stephenson, Moore & Edwards, Inc., Houston, Tex., for L. Q. Millerder.

Byron D. Coleman, Law Offices of Gus J. Zgourides, Houston, Tex., for Keith D. deFehr.

Jim S. Adler, Hazen, Graml & Adler, Houston, Tex., for John Albert Goodson.

Bruce K. Bornefeld, Houston, Tex., for William K. Watkins.

John M. O'Quinn, Riddle, Murphrey, O'Quinn & Cannon, Ellis F. Morris, Houston, Tex., for Jerry Malone, Jerrold Robin, and Charles T. and Phyllis Spear.

Richard W. Burns, Law Offices of Fred Parks, Houston, Tex., for Leonard Berry.

J. Julian Moore, Houston, Tex., for Richard Casas.

William B. Schaeffer, Jr., Houston, Tex., for Joseph Lowe.

Ed Carrithers, Houston, Tex., for Michael Euler, B. Deal, and Robert Hill.

John H. Holloway, Holloway & Rhem, Houston, Tex., for Jerry Cowan and Ray Hill.

Damon R. Capps, Jones & Capps, Houston, Tex., for Art Custer, Lyle Eberly and Malcolm Young.

William M. Laubach, Houston, Tex., for Kathy Engel.

Wayne H. Paris, Houston, Tex., for Ronald McCormick.

Don Karotkin, Houston, Tex., for David Henry and Perry Woelke.

Harry S. Jones, Bellaire, Tex., for James D. and Karen Marie Driskell.

Harvill E. Weller, Jr., Krist & McConnico, Houston, Tex., for Bob and Jane Viccellio, Keith, James R. Lewis and Gale Van Hoy.

Larry T. Hester, Houston, Tex., for Richard B. Cook.

Charles R. Clements, Houston, Tex., for Esther Rust.

Wm. G. Lowerre, Houston, Tex., for Joe and Shirley Daugherty.

Lynn C. Hensley, Houston, Tex., for Annette Mosier.

Frank Stovall, Houston, Tex., for F. J. Dryer, Fred Gale and Kenneth Tunnel.

Steve Elder, Houston, Tex., for Joe Allen Nelson.

Gene W. Frohbieter, Houston, Tex., for Edward A. Kurth.

Sherwood Gaines, Gaines & Merrill, Houston, Tex., for Pauline Morgenstern.

Joseph W. Amick, Kansas City, Mo., for Marsha and Thomas Paton.

Joseph L. Waitz, Waitz, Weigand & Downer, Houma, La., Ray C. Muirhead, Houston, Tex., for Karl Geist.

L. A. Greene, Jr., Houston, Tex., for Darlene Shelton.

Charles A. Moore, Reynolds, White, Allen & Cook, Houston, Tex., for Mary K. Boudreaux.

Daniel Roberts, William E. Hall, Jr., Houston, Tex., for Ronald DiCamillo and James Milo.

James M. Seabolt, Houston, Tex., for Ronald Clements.

Monroe Northrop, Austin, Arnett, Northrop, Kirkpatrick & Steber, Houston, Tex., for Gary Berkenkamp, Morgan Minter and Tom Wharton.

John D. Miller, Miller, Bronn & Brummett, Long Beach, Cal., for Martin-Decker Co.

John H. Holloway, Holloway & Rhem, Houston, Tex., for Jerry Cowan and Ray Hill.

Ernest A. Lucas, Jr., Houston, Tex., for Robert Scott.

Burke Martin, Saccomanno, Clegg, Martin & Kipple, Houston, Tex., for Lynn Brennan and Paul H. Kramer.

Ben H. Schleider, Jr., Dillingham, Schleider & Masquelette, Houston, Tex., for Greg Beloit, Churchill Colburn, Arthur J. Connally, Lonnie Kessler, Frederick Schooley and Edwin and Justine Smith.

John L. Mendoza, Houston, Tex., for Jerry Montgomery.

Robert F. Stein, Jamail & Gano, Houston, Tex., for Roy E. Cletcher, Jack Kendrigks, Norma McMillan, Bobby Rankin, Terrie Lynn Smith, Stephen F. Spencer, Jerome and Shirley Washington and Linda Davis.

Thomas M. Whitworth, Houston, Tex., for Jacqueline Wade.

Terry Sears, Nations & Cross, Houston, Tex., for Andy and Carolyn Murry and Kyle Patton.

George M. Cason, Jr., League City, Tex., for Edith Walters Meeks.

J. Donald Bowen, Helm, Pletcher, Hogan & Burrow, Houston, Tex., for Dana and Max Brinson, Raymond Lee Chapman, Bob Daniel, Granville Duke, Mike Grimes, Thomas Hughes, Kenneth L. Kramer, Jerry Logan, Armando Medina, Donald Myers, Angel Valvari and Samuel Allen Miller.

Gordon J. Kroll, Houston, Tex., for Tom Wolf.

Thomas M. DeWitt, Crouch & Crouch, Alvin, Tex., for Larry and Darlene Shelton.

Brenda Keen, Haynes & Fullenweider, Houston, Tex., for Richard Andrew Nelson and Levy Dolan Rankin.

Donald G. Havlick, Houston, Tex., for William Earl Kirtley.

Hugh J. Plummer, Brown, Bradshaw & Plummer, Houston, Tex., for Ronnie Factor.

Ray Elvin Speece, Houston, Tex., for Edward Furrate.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

The Court has carefully considered the motions for rehearing. After extensive review of the able legal memoranda as well as lengthy independent research into the jurisprudence relative to actions in the nature of interpleader, the Court is persuaded that its Memorandum and Order of November 1, 1974, should be, and it hereby is, withdrawn in its entirety, and substituted therefor is the following Memorandum and Order.

## I. NATURE OF THE CASE

A bill in the nature of interpleader has been filed in this Court pursuant to 28 U.S.C. § 1335, § 1397 and § 2361 by Aetna Casualty and Surety Company (Aetna), All-Star Insurance Corporation (All-Star), International Insurance Company (International), Angelo's Fisherman's Wharf, Inc. (Angelo's), Dutchman Seafood, Inc. (Dutchman) and Eddie's Oysters, Inc. (Eddie's). For the reasons stated herein, the bill is provisionally accepted as to the insurance companies—Aetna, All-Star and International—as plaintiffs. The insureds—Angelo's, Dutchman and Eddie's—are also provisionally included in the action as defendant-claimants at this time for reasons stated herein.

The initial motion of plaintiff-insurer All-Star to deposit property pursuant to 28 U.S.C. § 1335 was denied; this Court was unable to accept into the Court registry All-Star's initial tender of $300,000 of Class AAA and AA bearer bonds, as satisfying the provisions of § 1335. See 39 Fed.Reg. 26363 (July 18, 1974). Subsequently, All-Star has tendered $300,000 in U.S. Treasury Notes which do meet the requirements of Federal Treasury regulations. Likewise, the statutory provisions of § 1335 are satisfied, and accordingly, All-Star remains as a plaintiff in this action.[1]

## II. FACTS [2]

This action in the nature of interpleader was prompted by the outbreak of an epidemic of infectious hepatitis occurring in Houston, Texas, in September and October, 1973. Approximately 349 individual cases have been reported as having occurred during this time period. Many of these persons, if not all, allege that the epidemic was caused by the ingestion of raw oysters served "on the half shell" and consumed at Angelo's restaurant in Houston, Texas.

Numerous sacks of raw oysters were served by Angelo's during September and October, 1973.[3] These sacks were obtained from Dutchman of Houston, Texas; Dutchman in turn obtained the sacks of oysters from Eddie's of Port Sulphur, Louisiana.

Of the 349 cases so far reported, plaintiff Aetna has compromised and settled 105 claims for a total of $347,466.85. Another 105 claimants have filed lawsuits against

---

1. Plaintiff's subsequent motion pertaining to the treasury notes is therefore granted. See Motion to Deposit Property Into Registry of the Court Pursuant to 28 U.S.C.A. § 1335 Attendant to Filing Bill in Nature of Interpleader (October 24, 1974). The treasury notes submitted are $300,000 worth of United States Treasury Nine Percent Notes, 100M each, due August 15, 1980, dated August 15, 1974, s. c. a. first coupon due February 15, 1975, Certificate Nos. 243, 244 and 245. Id.

2. The facts stated here are taken from a statement provided by the interpleader plaintiffs. See Plaintiffs' Memorandum of Authorities at 1–2 (September 24, 1974). This recitation is offered solely to outline and delimit the nature

of the present bill and its potential procedural impact and indicates no adoption or statement of fact-finding by this Court as to any information pertinent to this controversy which the respective parties and claimants may wish to controvert.

3. It is possible that some of the allegedly contaminated oysters were consumed by persons dining at another eating establishment in Houston after the oysters had been distributed by Eddie's and/or Dutchman. Should such persons be located, they should be listed by plaintiff-insurers as defendant-claimants adverse to plaintiffs after proper notice.

the insurance companies and the seafood establishments in various district courts of Harris County, Texas.[4] The remaining 139 individuals [5] who reportedly contracted hepatitis from eating at Angelo's during the time period in question have not filed suits, but are allegedly asserting claims against the seafood establishments.

### III. PROCEEDS AVAILABLE TO CLAIMANTS

The proceeds available from Aetna, All-Star and International are as follows: from Aetna, $952,533.15, representing the remaining proceeds available from an original coverage issued to Angelo's of $1,300,000, depleted in the amount of $347,466.85;[6] from All-Star, $300,000 originally issued to Eddie's; and from International, $300,000 originally issued to Dutchman. The total available proceeds are thus $1,552,533.15— $952,533.15 (Aetna) plus $300,000 (All-Star) plus $300,000 (International). Pursuant to the requirements of 28 U.S.C. § 1335, bonds or securities representing the total proceeds have been deposited and accepted into the registry of this Court.

### IV. JURISDICTION

This Court provisionally determines that it has jurisdiction to evaluate this bill in the nature of interpleader. In statutory interpleader cases, jurisdiction will lie if the two requirements of 28 U.S.C. § 1335 are met:

(a) there must be diversity of citizenship [7] between two or more adverse claimants; and (b) there must be an amount greater than $500 in controversy. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) (hereafter referred to as *Tashire*). Diversity of citizenship has been alleged to exist between at least two of the adverse claimants.[8] Clearly, with 105 suits currently pending in Harris County district courts seeking over $8,000,000 in damages, *see* Plaintiffs' Memorandum of Authorities at 2 (September 24, 1974), the amount in controversy exceeds $500. The Court also finds that the plaintiff-insurers are exposed to double or multiple suits, justifying invocation of jurisdiction under § 1335. *Cf. MFA Mutual Ins. Co. v. Lusby*, 295 F.Supp. 660 (E.D.Va.1960).

### V. VENUE

Statutory interpleader venue is governed by 28 U.S.C. § 1397. Venue is proper in any judicial district of the United States where one or more claimants reside.[9] Since at least two of the potential claimants herein reside in the Southern District of Texas, venue is proper in this Court.

### VI. SERVICE OF PROCESS; PERSONAL JURISDICTION

Personal jurisdiction and nationwide service of process are provided for in statu-

---

4. One suit has also been filed in the Southern District of Texas. *See Paton v. Angelo's Fisherman's Wharf, Inc.*, Civil Action No. 74–H–236.

5. There may possibly be other claimants who have not yet been ascertained or located by plaintiff-insurers or who have not yet come forward. Considering the possible far-flung locations of some of the claimants—one such person apparently resides in London, England, according to the insurers—the Court views as a real possibility the fact that the total of 139 may increase. Should other claimants eventually be located, these claimants should be joined as defendants in this bill against the plaintiffs.

6. The total disbursement to the 105 persons who have settled with Aetna.

7. As the concept of "citizenship" is defined and applied in 28 U.S.C. § 1332.

8. Actually, it is alleged that several of the claimants—e. g., Loy Cletcher (Illinois), Karl Geist (Louisiana) and Russell Hanson (Nebraska)—have citizenship diverse to that of other claimants who are Texas citizens. *See* Plaintiffs' Memorandum of Authorities at 7 (September 24, 1974).

9. "Any civil action of interpleader or in the nature of interpleader under § 1335 of this title may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397.

tory interpleader cases under 28 U.S.C. § 2361.[10]

## VII. INJUNCTIVE RELIEF AVAILABLE

■ Pursuant to 28 U.S.C. § 2361 this Court may enjoin pending federal and/or state court proceedings affecting the subject matter of the interpleader: the interpleaded fund. See 28 U.S.C. § 2361. Section 2283, 28 U.S.C., may be utilized to enjoin state court proceedings by this Court in aid of its jurisdiction.[11] Notice and hearing prior to the issuance of a temporary restraining order or a preliminary injunction are not required by § 2361 or by Rule 65(a), Fed.R.Civ.P. See 3A J. Moore, Federal Practice ¶ 22.13 (2d ed. 1974); 7 Wright & Miller, Federal Practice and Procedure: Civil § 1717 (1972 ed.). However, because of the extraordinary authority vested in this Court by § 2361, the Court will assume only provisional jurisdiction over the fund in this cause until claimants of diverse citizenship have been served notice of the filing of this action in the nature of interpleader in accordance with the procedure to be set forth below.[12] See Metropolitan Life Ins. Co. v. Dumpson, 194 F.Supp. 9 (S.D.N.Y.1961).

## VIII. THE FIRST STAGE OF INTER-PLEADER; PRELIMINARY IN-JUNCTION AS TO THE FUND

■ The insurers have deposited with the Court bonds or securities representing the total proceeds available in this action in the nature of interpleader. Allegedly, two or more claimants have citizenship diverse from that of other claimants. More than $500 is in controversy. With over 100 suits currently pending in Harris County district courts seeking over $8,000,000 in damages, the stakeholders are exposed to the vexation of double or multiple suits which contain aggregate claims for damages far in excess of the available proceeds of the "fund".

On this basis, the Court concludes that the bill in the nature of interpleader should be provisionally accepted. The Court declares that a preliminary injunction be issued as to the insurance proceeds. All persons seeking damages allegedly caused by the "oyster hepatitis epidemic" are enjoined from pursuing satisfaction of such a claim as against the $1,552,533.15 "fund" in any other court of the United States or in any state court. This injunction pertains to cases now pending as well as cases that may be filed. The insurers must tender to this Court proof of service upon diverse citizen claimants in accordance with the procedures established in this Memorandum and Order before the requisites of a bill in the nature of interpleader are satisfied.

## IX. ENJOINING CLAIMS AGAINST THE INSUREDS; INCLUDING THE INSUREDS AS PARTIES

Included in the insurer's application for this bill is a request to join the insured parties and extend to them the protection of the preliminary injunction so as to stay all other suits during the pendency of this proceeding. See Plaintiffs' Motion for Rehearing of the Court's Memorandum and Order at 1 (November 8, 1974). Plaintiffs contend that this Court can adequately protect claimants who are served with process by: (a) permitting them to proceed with *excess* suits against the insureds; (b) "tolling" the statute of limitations as to their

---

10. "In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found." 28 U.S.C. § 2361.

11. See Ilsen & Sardell, Interpleader in the Federal Courts, 35 St. John's L.Rev. 1, 55–56 (1960); 7 Wright & Miller, Federal Practice and Procedure: Civil § 1717 (1972 ed.).

12. See page 1250 and note 28, infra.

claims during the pendency of the interpleader proceeding; or (c) permitting claimants to pursue excess claims against the insureds as part of the existing interpleader action. See Plaintiffs' Memorandum of Authorities at 12 (September 24, 1974). These suggestions for claimant protection are all bottomed on plaintiffs' position that the insureds should properly be covered by injunction and that this Court can require all claimants to proceed only in this action on the issue of liability. No suggestion is made as to how the Court should proceed if the insureds are not so covered.

As will be seen, these suggestions are not wholly satisfactory. Their implementation could conceivably cause this Court to exceed its statutory authority. The Court cannot conclude with certainty at this point that interpleader jurisdiction clearly should be extended to protect the insureds from other litigation via issuance of similar injunctive relief. To ensure the proper resolution of this jurisdictional question, the Court will require the assistance of claimants' counsel as well as that of counsel for plaintiffs.[13] Service of process shall commence immediately in accordance with the procedures established below as to all the potential claimants who presently have suits pending against the insured parties in other courts. Once served, these claimants will have until March 31, 1975, to file appropriate motions and to submit to this Court memoranda addressing the legal questions outlined below. If the Court deems it necessary, a "show cause" hearing will be held to further explore and thereupon resolve these questions.

To maintain the status quo until the Court is in a position to adjudicate this jurisdictional question as to both the insurers and the insureds, this Court, pursuant to 28 U.S.C. §§ 2283 and 2361, preliminarily enjoins as well all persons who might potentially have claims against the insured parties arising out of the "oyster hepatitis epidemic" from pursuing present or future actions for damages in any other court of the United States or in any state court. The Court emphasizes that this injunction is provisionally issued and will remain in effect only until the proper scope of this Court's interpleader jurisdiction has been determined. Once all such questions are resolved, the injunction will be modified, if appropriate, upon proper motion of counsel or of this Court.

## X. THE JURISDICTIONAL QUESTION

Plaintiffs' request for an injunction as to suits against the insureds triggers significant jurisdictional considerations. The issue to be resolved is the proper scope of this interpleader proceeding. The Court sets out the following analysis to point up the legal problems and to provide guidelines to counsel for claimants to aid them in their efforts to supply this Court with answers to these questions. Understanding interpleader jurisdiction begins with an examination of 28 U.S.C. § 1335 and of the one case in which the Supreme Court has undertaken to interpret the statute.

### A. The Historical Perspective

The remedy of interpleader has existed for over 600 years.[14] Originating in the common law courts, the remedy soon began to be used exclusively by the English Courts of Chancery. Interpleader was a device that could be employed by a defendant in a limited number of circumstances to protect himself from double vexation upon a single liability. See 7 Wright & Miller, Federal Practice and Procedure: Civil § 1701 at 351 (1972 ed.). Four elements evolved as requisites which had to be satisfied for interpleader to be available as a remedy: (1)

---

**13.** Calling for such assistance has been utilized before by courts confronted with determining proper interpleader jurisdiction. See, e. g., Travelers Indemnity Co. v. Greyhound Lines, Inc., 260 F.Supp. 530, 532 (W.D.La.1966), aff'd, 377 F.2d 325 (5th Cir. 1967) (per curiam), cert.

denied, 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1968).

**14.** See Rogers, Historical Origins of Interpleader, 51 Yale L.J. 924 (1942); Hazard & Moskovitz, An Historical and Critical Analysis of Interpleader, 52 Calif.L.Rev. 706 (1964).

same thing, debt, or duty claimed by all the parties against whom the relief is demanded; (2) all adverse titles or claims dependent on or derived from a common source; (3) no claim or interest in the subject matter by the person seeking interpleader relief; and (4) no independent liability incurred by plaintiff to any of the claimants. *See* 3A J. Moore, Federal Practice ¶ 22.03 at 3010–11 (1974 ed.) *quoting* 4 Pomeroy, Equity Jurisprudence: § 1322 (Symons 5th ed. 1941).

Beginning in 1917, Congress expanded and liberalized interpleader to provide relief for insurance companies and certain beneficial societies.[15] The jurisdiction, venue and service of process provisions of statutory interpleader have already been discussed. The statute also provides that the insurer can maintain an interest in the outcome and not admit liability when it deposits the contested fund into the Court's registry. In this sense, § 1335 is characterized as providing for "an action in the nature of interpleader," as distinguished from the traditional "strict bill of interpleader".

## B. The Supreme Court Opinion in State Farm Fire & Cas. Co. v. Tashire

### 1. Background of the Case

The current jurisdictional scope of 28 U.S.C. §§ 1335, 1397 and 2361 must be measured by the standards established by the United States Supreme Court in *State Farm Fire & Cas Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).[16] In *Tashire,* a Greyhound bus collided with a pickup truck on a California highway, killing two persons and injuring several others. Citizens of five states and Canada were injured. The truck driver's insurer, which had extended coverage in the amount of $20,000, attempted to interplead all other parties in the United States District Court for the District of Oregon. The district court issued an injunction providing that all suits brought by the injured bus passengers against the insured truck driver and his insurer as well as the other potential tortfeasors be prosecuted in the interpleader proceeding. 386 U.S. at 528, 87 S.Ct. at 1202, 18 L.Ed.2d at 274.

The United States Court of Appeals for the Ninth Circuit reversed this decision on interlocutory appeal, dissolved the injunction and dismissed the action. The Ninth Circuit held that in a state like Oregon, which did not permit "direct action" suits against insurance companies, the insurer of the truck driver could not invoke federal interpleader until all claims against the insured-alleged tortfeasor had been reduced to judgment. According to the appellate court, persons with unliquidated tort claims are not "claimants" within the meaning of

---

15. *See* 39 Stat. 929 (1917); 43 Stat. 976 (1925); 44 Stat. 416 (1926); 49 Stat. 1096 (1936), codified as 28 U.S.C. § 41(26) (1940); and the 1948 amendment, which is the current trilogy of statutes, 28 U.S.C. §§ 1335, 1397 (venue) and 2361 (process and procedure). For a comparison of the wording and effect of the different statutes, *see generally* Annotation, *Availability of Interpleader to Insurance Company for Resolving Dispute as to Insurance Policy Under Federal Interpleader Acts (Presently 28 U.S.C.S. §§ 1335, 1397, 2361) and Rule 22 of Federal Rules of Civil Procedure,* 19 A.L.R.Fed. 166 (1974).

The person generally credited with creation of 28 U.S.C. §§ 1335, 1397 and 2361 is Professor Zechariah Chaffee, Jr., of Yale University. *See Modernizing Interpleader,* 30 Yale L.J. 814 (1921); *Interstate Interpleader,* 33 Yale L.J. 685 (1924); *Interpleader in the United States Courts,* 41 Yale L.J. 1134, 42 Yale L.J. 41

(1932); *Federal Interpleader Act of 1936,* 45 Yale L.J. 953, 1161 (1936); *Federal Interpleader Since the Act of 1936,* 49 Yale L.J. 377 (1940); and *Broadening the Second Stage of Interpleader,* 56 Harv.L.Rev. 541, 929 (1943).

16. *See* Urbom, *Multiple Claims from One Accident: Federal Interpleader,* 34 Ins.Counsel J. 343 (1967); Note, 53 Iowa L.Rev. 233 (1967); Note, 46 N.Car.L.Rev. 83 (1967); Note, 22 S.W. L.J. 656 (1968).

Plaintiffs vigorously urge that the holding of *Tashire* should be restricted because of its arguably distinguishable fact situation. This Court cannot necessarily agree at this point. Nothing in the Supreme Court's decision evidences a clear intention to adjudicate a narrow fact situation. On the contrary, the analysis, tone and broadly-based language of the decision suggest that *Tashire* was intended to set general standards of statutory interpleader jurisdiction and procedure in mass tort situations.

28 U.S.C. § 1335. 386 U.S. at 528, 87 S.Ct. at 1202, 18 L.Ed.2d at 274.[17]

The Supreme Court reversed the decision of the Ninth Circuit. After deciding that it had jurisdiction under 28 U.S.C. § 1335, the Court went on to state its disagreement with the threshold requirement imposed by the Ninth Circuit. It concluded that an insurer should be able to invoke the benefits of federal statutory interpleader before any claimant asserting a claim against its insured had reduced the claim to judgment.[18]

In the Court's view, permitting an insurer to bring an interpleader action prior to the reduction of any claim to judgment best promoted the purposes of statutory interpleader, especially "considerations of judicial administration". 386 U.S. at 533, 87 S.Ct. at 1205, 18 L.Ed.2d at 276. The Court hypothesized that if an insurer were required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. To the Court, this would foster a "race to judgment". Id.

### 2. Enjoining Other Tashire Proceedings Pending Outcome of Interpleader

Recognizing that the truck driver's insurer had properly invoked § 1335 interpleader jurisdiction, the Supreme Court went on to hold that the statute did not entitle the insurer, which had a maximum liability of $20,000 at stake, to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and

also extending such protection to its insured, an alleged tortfeasor. 386 U.S. at 533, 87 S.Ct. at 1205, 18 L.Ed.2d at 276. Even less entitled was Greyhound Bus Lines, whose insurer was not a party and thus not a contributor to the "fund", to have such order expanded to protect it and its driver, both alleged to be tortfeasors, from suits brought by its passengers in various state or federal courts. Id.

The rationale prohibiting this expanded use of interpleader was stated as follows:

Here, the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the "fund," the deposited proceeds of the insurance policy. In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund.

386 U.S. at 533–34, 87 S.Ct. at 1205, 18 L.Ed.2d at 277. The Court went on to illustrate when invocation of statutory interpleader could restrain pursuit of a remedy in other forums:

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the claimants. *It marks the outer limits of the controversy.* It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund,

---

17. In reciting the Ninth Circuit's rationale in *Tashire,* the Supreme Court noted that the decision of the Ninth Circuit was in conflict with that of other courts, listing decisions in: *Travelers Indemnity Co. v. Greyhound Lines, Inc.,* 260 F.Supp. 530 (W.D.La.1966); *Commercial Union Ins. Co. of N. Y. v. Adams,* 231 F.Supp. 860 (S.D.Ind.1964); *Pan American Fire & Cas. Co. v. Revere,* 188 F.Supp. 474 (E.D.La.1960), and *Onyx Refining Co. v. Evans Production Corp.,* 182 F.Supp. 253 (N.D.Tex.1959). 386 U.S. at 529 n. 4, 87 S.Ct. 1202, 18 L.Ed.2d at 274.

18. Focusing on the language of 28 U.S.C. § 1335(a)(1), the Supreme Court concluded that the statute permitted as "claimants" those persons who "are claiming *or may claim*" (emphasis added) to be entitled to the interpleader fund in question. The Court emphasized that the 1948 revision to the statute was specifically intended to remove whatever requirement there might previously have been that an insurer wait until at least two claimants had reduced their claims to judgments. 386 U.S. at 532–33, 87 S.Ct. at 1204–1205, 18 L.Ed.2d at 276.

should also protect the stakeholder from vexatious and multiple litigation. (emphasis added)

*Id.*

The United States Court of Appeals for the Fifth Circuit has interpreted § 1335 in strict adherence with the *Tashire* case. *See Travelers Indemnity Co. v. Greyhound Lines, Inc.,* 377 F.2d 325 (5th Cir. 1967) (per curiam), *cert. denied,* 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1968), *affirming* 260 F.Supp. 530 (W.D.La.1966).[19]

### 3. The "Fund-As-Target" Rationale

Plaintiffs seize upon the Supreme Court's "fund-as-target" illustration, 386 U.S. at 533–34, 87 S.Ct. at 1205, 18 L.Ed.2d at 276–277, as providing authority for their requested expanded injunction in the instant case. According to plaintiffs, the insureds are insolvent, or marginally solvent; the insurance proceeds mark the extent of available funds; and claimants' only hope of receiving compensation for any alleged damages is through the interpleader proceeding. Plaintiffs contend that the insureds' financial condition transforms the interpleader action into a proceeding in which the fund itself is the target and

marks the outer limits of the controversy. *See* Plaintiffs' Motion for Rehearing of the Court's Memorandum and Order at 2–3 (November 8, 1974).

On the surface, plaintiffs' position seems to fit snugly within the Supreme Court's hypothesis. However, a probing of the depths of this "solvency" standard fails to reveal that it is as controlling a factor as plaintiffs would indicate. This Court does not challenge or discredit the insureds' assertions of marginal solvency. However, the possibility of improvement in financial condition, viewed together with the recognition that many tortfeasors face comprehensive insolvency whenever their assets are levied against with substantial adverse judgments, causes this Court to conclude that solvency alone, or its absence, cannot justify expanding interpleader jurisdiction. A tortfeasor's impending insolvency, or proximity to it, does not of itself relieve the tortfeasor of exposure to liability for tortious acts.

### C. The Impact of Tashire

Thus, insolvency alone cannot dictate joinder of insureds in an interpleader proceeding, but it remains as a factor to be considered.[20] Interpleader jurisdiction may

---

**19.** The facts in *Travelers* are strikingly similar to those in *Tashire;* in fact, so similar that the lack of factual difference convinced the appellate panel that *Tashire* was directly and totally controlling. 377 F.2d at 327–28.

In *Travelers,* a Greyhound bus collided with a truck. Several persons were killed or seriously injured. Seventeen suits were filed in Texas as a result of the accident, and nineteen were filed in Louisiana. Total claimed damages exceeded $7,000,000. Travelers, the insurer for the truck, had insurance liability in the amount of $325,000. On this basis, it attempted by resorting to interpleader to force all claimants to adjudicate claims against it in a § 1335 proceeding in the Western District of Louisiana, Lake Charles Division.

The trial court granted an injunction preventing the execution of any claimant's judgment against the interpleaded fund except through petition in the interpleader proceeding. However, the trial court refused to enjoin *all* suits pending against Travelers. Anticipating the Supreme Court's decision in *Tashire,* Judge Hunter concluded that the insurer should not be entitled to an injunction against *all* suits pending against Travelers; i. e., Travelers could

not utilize 28 U.S.C. § 1335 to enjoin tort plaintiffs from exercising their freedom to choose their own forum in which to bring suit. The far-flung nature of the case, taken together with the fact that Travelers was not being sued in Texas, but was attempting to force Texas plaintiffs to litigate claims only in Lake Charles, convinced the court that interpleader jurisdiction did not extend as far as the insurer advocated. 260 F.Supp. at 534–35.

The Fifth Circuit affirmed in *Travelers* a few days after *Tashire* was rendered. Seizing upon the theme advanced by Judge Hunter, the appellate panel adopted the principle that an injunction would only be proper with respect to proceedings against the fund itself. 377 F.2d at 328. Other district courts in the Fifth Circuit have interpreted *Travelers* accordingly. *See, e. g., Maryland Cas. Co. v. Sauter,* 344 F.Supp. 433 (N.D.Miss.1972).

**20.** *Cf. Preferred Risk Mutual Ins. Co. v. Greer,* 289 F.Supp. 261, 263 (D.S.C.1968). Indeed, this Court directs detailed proof of the insureds' current financial condition to be submitted by their counsel by March 31, 1975, so that the impact of this condition can be frankly evaluat-

be expanded under certain equitable circumstances, and expansion is not restricted solely to those situations where the fund is the target. *See Commercial Union Ins. Co. of N. Y. v. Adams,* 231 F.Supp. 860 (S.D. Ind.1964).[21] Some commentators have stated that interpleader should be viewed as a remedial joinder device that serves as a useful adjunct to the provision for the permissive joinder of parties found in Rule 20, Fed.R.Civ.P. *See* 7 Wright & Miller, Federal Practice and Procedure: Civil § 1702 at 361 (1972 ed.).

### D. Equitable Assessment of Jurisdictional Factors

Expansion of interpleader jurisdiction can occur only after equitable assessment by this Court, pursuant to 28 U.S.C. §§ 1335, 1397 and 2361, of pertinent factors, many of which are hereafter set out to aid all counsel in supplying the Court with suggestions as to whether such expansion should occur in this case.

The onerous aspects of the *Tashire* and *Travelers* cases would appear to be absent, particularly the spectre of one insurer with relatively minor liability exposure attempting to utilize interpleader to herd all parties with causes of action in several states into a single distant forum. The insurers are all seeking interpleader, and the entire insurance proceeds available are included in the interpleader fund. The insureds' financial condition borders on insolvency. All of the potential claimants are, or would be, seeking relief in Harris County, Texas, and most of them reside in Harris County. The insureds allege claims to each other's interpleaded funds and probably qualify as claimant-defendants. It must be recognized that if the pending state actions are permitted to go forward simultaneously with the interpleader action, the expenditure of duplicative discovery efforts and multiple costs of trial to the insurers will be incurred.[22]

Additionally, permitting state court actions to go forward could frustrate the insurer's opportunity to contest liability, in an orderly, uniform manner in the interpleader

---

ed by the Court and counsel along with other factors.

21. *Adams* involved the adjudication of claims against an interpleaded fund established because of an explosion at the Indiana State Fair Grounds. The court there issued a broad injunction preventing any other action from going forward until the interpleader action was concluded. The *Adams* case was one in which there was virtually no objection to trying all the claims in the interpleader proceeding and where all of the basic tort suits would have been prosecuted in the forum state. *See* Urbom, *supra,* 34 Ins.Counsel J. 343, 348 (1967). The Supreme Court in *Tashire* referred to *Adams,* apparently approving its result. *See* 386 U.S. at 529 n. 4, 87 S.Ct. at 1202, 18 L.Ed.2d at 274.

*Adams* is pertinent to the instant case because counsel for the claimants may possibly offer no opposition to conducting the hearing on liability in this Court. With all cases to be adjudicated on their merits pursuant to the laws of Texas, expansion of interpleader jurisdiction under such circumstances might be justified on the basis of *Adams* and its citation by the Supreme Court.

This Court cannot agree, however, with plaintiffs' contention that *Adams* controls this case, at least at this stage. Sufficient factual differences exist in that case to limit its appli-

cability to this case. Further, considering the type of equitable analysis required in determining proper interpleader jurisdiction, the peculiar facts of each case will necessarily limit its precedential value.

22. Plaintiffs have informed this Court without elaboration that consolidation is not available in the pending state court suits. The Texas rule on consolidation is identical in wording to, and was patterned after, the Federal rule. *Compare* Tex.R.Civ.P. 174(a) with Fed.R.Civ.P. 42(a). The rules permit consolidation of actions involving a common question of law or fact pending before the court.

Perhaps consolidation can still be effected in the 105 state court cases now pending. The same legal question is involved in each case; and arguably, the same transaction bottoms each cause of action. Whether different state district courts can consolidate each other's cases is not clear from Rule 174(a), Tex.R. Civ.P.

Nevertheless, this Court directs the parties submitting briefs by March 31, 1975, to inform the Court of the status of the availability of state court consolidation accompanied by a frank assessment of the possibility of its employment. A similar directive is made as to the applicability vel non of Rule 43, Tex.R.Civ.P., the Texas interpleader statute.

proceeding.[23] Disparate judgments from other forums on the issue of liability, with accompanying disproportionate claims to the interpleaded fund, could defeat orderly distribution of the funds and could possibly also motivate the sort of "race to judgment" which the Supreme Court sought to discourage.[24] *See* 386 U.S. at 533–35, 87 S.Ct. at 1205–1206, 18 L.Ed.2d at 276–278.

█ The equitable factors favoring expanded interpleader jurisdiction are theoretically counterbalanced by the consideration that requiring all state court actions to cease pending the outcome of the interpleader proceedings prevents tort plaintiffs from prosecuting cases in their chosen forums.[25] Any judgment that this Court would render when applying state law on the issue of liability would undoubtedly have res judicata effect in a Texas state court proceeding involving the same parties. Thus, plaintiffs' suggestion that "choice-of-forum" is protected when successful interpleader claimants can pursue claims *in excess* of interpleader awards, *see* ¶ IX, *supra* at pages 1242–1243, is not entirely satisfactory because it conveniently neglects the other side of the "liability" coin:

rendition of judgments adverse to the claimants in the interpleader action may well preclude them from asserting the insureds' liability in other forums.

Therefore, the Court affords to counsel for claimants who may appear in the interpleader action an opportunity to assist in resolving this issue if, in truth, it is an issue. The briefs to be submitted by March 31, 1975, should focus on answering the question as to whether in this particular case the permitting of the interpleader action to proceed while other actions are restrained will seriously prejudice a claimant's choice of forum and, even if so, whether such a proceeding will best serve the interests of all the parties. Being persuaded at this point that the equities on balance may best be served by a single adjudication of liability, this Court sees merit in maintaining the vitality of the interpleader proceeding as to both insurers and insureds. Counsel should fully examine this legal area and suggest methods whereby this can be accomplished. Counsel should also address themselves to the problems which may arise from the possible rendition of other judgments prior to the

---

23. Conceivably, the *Tashire* court contemplated that a hearing on the issue of liability would be necessary during the interpleader proceeding since persons were permitted to participate as claimants who had not yet instituted suits to contest liability in other courts. Section 1335 permits the insurer to have an "interest" in the outcome; the Supreme Court's interpretation indicates that this "interest" might extend beyond the insurers' merely recouping the unawarded proceeds of the fund to the protecting of the proceeds by contesting liability on their own behalf as well as on behalf of their insureds.

24. In this case, an alternative "race to judgment", or more properly, "race to execution of judgment", could occur. A tort plaintiff who wins a favorable state court judgment during the pendency of this interpleader proceeding could ignore this proceeding entirely, opting instead to satisfy his judgment by seeking a levy of execution against the assets of the insured-tortfeasor. This could occur because an action in the nature of interpleader discourages voluntary claimant participation: a claimant's participation produces a prorated recovery at best. Enjoining pursuit of the interpleaded fund in favor of the insurers only protects the

fund, but does nothing to retard parallel state actions against the insureds.

The fund would be in limbo, unavailable to satisfy adverse judgments. The insureds could then become exposed to the very liability for which they initially purchased, and technically still had, insurance coverage. Further, failure to provide protection with proceeds not yet exhausted might well expose the insurers to liability for breach of their agreement with the insureds.

A limited injunction restraining pursuit of the insureds' assets to satisfy adverse judgments as well as pursuit of the interpleaded fund does not seem to be a viable alternative. The Court very much doubts that interpleader jurisdiction extends to any *res* or assets other than the interpleaded fund. *Consolidated Coal Co. v. Bailey,* 467 F.2d 1124 (3rd Cir. 1972), *affirming,* 330 F.Supp. 474 (W.D.Pa.1971); *Knoll v. Socony Mobil Oil Co.,* 369 F.2d 425 (10th Cir. 1966).

25. Section 1335 has been characterized as a barrier to a "race to judgment" without converting interpleader into an all-purpose "bill of peace". Wright, Law of Federal Courts § 74 at 326 (1970 ed.); *State Farm Fire & Cas. Co. v. Tashire, supra,* 386 U.S. at 537, 87 S.Ct. at 1207, 18 L.Ed.2d at 279.

interpleader hearing, as well as the effect, if any, which rendition of judgment on liability by this Court will have on cases not yet concluded in other forums.

As noted previously, the Court only issues at this time a preliminary injunction restraining all present and future claimants from pursuing relief against the insurers and the insured parties until the proper scope of jurisdiction in this action in the nature of interpleader has been resolved. When final determination has been achieved, the injunction will be modified on appropriate motion of counsel or of this Court.

The insured parties will be included in the interpleader action at this time as defendant-claimants. Should future developments indicate that the insured parties should be realigned, counsel can so move the Court and suggest proper positioning alternatives with appropriate reasons and supporting legal authorities.

## XI. SECOND "STAGE" OF INTERPLEADER

### A. Introduction

Because of the unresolved jurisdictional questions, the bill in the nature of interpleader has only been provisionally accepted in this first "stage". The second "stage" of interpleader is one to determine the respective rights of proper claimants to the fund. To provide guidance to prospective interpleader participants and to structure a suggested format, assuming such a "stage" is reached, the Court proceeds to highlight its purpose and the procedure to be followed.

At such a stage, each claimant occupies an adversary position as to the other claimants and must proceed accordingly. Each claimant will file an answer setting out a statement of his claim to the res (the "fund") in contest, an answer to the claim of his opponent, if appropriate, and a statement of any additional claim he may have

against the stakeholder or the other claimants within the limits of counterclaims. 7 Wright & Miller, Federal Practice and Procedure: Civil § 1715 at 442–46 (1972 ed.); cf. Loew's, Inc. v. Hoyt Management Corp., 83 F.Supp. 863 (S.D.N.Y.1949).

The statutes provide this Court with the authority to issue process and to declare a time at which process shall be returnable. 28 U.S.C. § 2361. Otherwise, the applicable statutes provide no guidance in delineating rules for initiation of the second stage of interpleader, and this Court can locate scant judicial authority to guide such initiation.[26] See Home Ins. Co. v. Paige, 255 F.Supp. 51 (D.Md.1966); Commercial Union Ins. Co. of N. Y. v. Adams, 231 F.Supp. 860, 868 (S.D. Ind.1964). Wishing to act cautiously within a practicable procedural framework, the Court sets out the following tentative procedures.

### B. Notification

The first procedural step is notification of all proper claimants. According to plaintiffs' counsel, many potential claimants have either filed suit or can otherwise easily be located. Notifying them will not present difficulties. However, problems can arise in connection with notifying those persons who are eligible to be potential claimants but whose location cannot be easily verified, as well as those potential claimants who are unknown to plaintiffs at this time.

Service of process can be commenced immediately under ordinary procedures to effect service on those claimants whose location is verified. A copy of this Memorandum and Order will accompany the summons so that all potential claimants served are fully aware of the nature of this proceeding, the limitations imposed as to the filing or maintaining of a claim against the fund, and the deadlines to be followed in the interpleader proceeding in this Court.

---

**26.** As the Supreme Court noted in *Tashire*, the Congress gave little thought to the proper scope of the second "stage" of interpleader, or to just what would be adjudicated by the interpleader court. *See State Farm Fire & Cas. Co. v. Tashire, supra,* 386 U.S. at 535 n. 17, 87 S.Ct. at 1206, 18 L.Ed.2d at 278, *quoting Chafee, supra,* 56 Har.L.Rev. 929, 944–45 (1943).

*See* pages 1251–1252, *infra.* All courts in which proceedings have been filed against the insureds arising out of the subject hepatitis epidemic will also be served a copy of this Memorandum and Order and notified by counsel that this Court has authorized a stay of such proceedings pursuant to statute, pending further notification by this Court.

■ Those potential claimants who are unknown or unable to be located at this time will require notification and verification of location before service upon them can be effected. The Court has broad discretion to further the goal of notifying claimants, pursuant to 28 U.S.C. § 2361, but is reluctant to designate a rigid format for notification without the benefit of suggestions from counsel. Recognizing the ethical strictures that may inhibit counsels' suggestions, the Court states preliminarily that it is willing to authorize paid listings of notice and publication in local newspapers or other appropriate publications.[27]

Counsel for plaintiffs are therefore directed to confer and submit to the Court by January 15, 1975, a proposed order incorporating the suggested language of the advertisement-notices to be published, including a recitation of the date for filing of claims by claimants which the Court designates as May 15, 1975, the names of the publications to be utilized and the designated sequence of dates of publication to be employed.

To establish some framework within which to work, this Court designates February 28, 1975, as the deadline for completing notification and service of process upon claimants. Within 30 days thereafter, by March 31, 1975, counsel for plaintiffs will file in this cause a verified correct list of all claimants, with complete addresses, who have been notified by certified mail, return receipt requested along with the date of receipt of such notice. This list will include, where appropriate, the names and addresses of claimants' counsel.[28] An additional list of known claimants who have not been notified will also be filed, and counsel for plaintiffs will be under a continuing duty to serve such claimants, where possible, and to update the list of claimants served in this cause.

As heretofore indicated,[29] the Court designates March 31, 1975, as the date for the filing of appropriate motions and accompanying legal memoranda by counsel for claimants on the issues of jurisdiction and the enjoining of claimants from prosecuting

---

**27.** Plaintiffs have voiced objection to notifying persons who are unknown or unable to be located. *See* Plaintiffs' Motion for Rehearing of the Court's Memorandum and Order at 9–10 (November 8, 1974). According to the insurers, advertising would compel them to engage in conduct detrimental to the best interests of the insureds: the filing of questionable claims would be encouraged; and many claimants who would otherwise be uninterested in seeking damages might feel compelled to assert formal claims.

Plaintiffs may have raised this objection without benefit of this Court's current Memorandum and Order which provisionally enjoins all suits against the insureds as well as the insurers. Regardless of the reason, Plaintiffs' Motion for Rehearing in this respect cannot be favorably entertained. The insurers have emphasized that the insurance proceeds are effectively the only funds available to satisfy any claims of tort plaintiffs. The insurers have further sought an injunction pursuant to 28 U.S.C. §§ 1335, 2361 and 2283 to enjoy protection from multiple vexatious suits arising out of this alleged mass tort.

To this Court, the goals sought to be promoted by 28 U.S.C. § 1335 are best served by including all possible claimants in one interpleader action. Notification will ensure that as many persons as are entitled will be at least partially satisfied as a consequence of this proceeding. Not requiring notification could result in completely foreclosing from recovery those who were unaware of the interpleader action. Accordingly, some form of notice by publication is contemplated for use in this case, absent countervailing factors not apparent to this Court at this time.

**28.** Pursuant to the conditions placed on this Court's provisional acceptance of jurisdiction and preliminary grant of injunctive relief, the Court should be notified as soon as possible by counsel for plaintiffs of the effecting of service on at least two adverse claimants of diverse citizenship. *See* ¶ VII, *supra* at 4.

**29.** *See* note 13 and accompanying text; *see generally* ¶¶ IX and X.

claims in other forums during the pendency of the interpleader action in this Court.

### C. Filing of Claims

The Court designates the deadline date for the filing of claims as May 15, 1975. The Court recognizes that all claimants may not have been notified and/or served by February 28, 1975, and that all claims may not have been filed by May 15, 1975. However, this deadline will not preclude the subsequent filing of claims prior to the expiration of the appropriate statute of limitations, although the Court will scrutinize the basis for late filing of any claimant who has had proper notice and to which claim there is opposition on file. In the interim, normal discovery and routine preparation for trial of those claimants who have been notified and served can go forward. For "late arrivals", already-accomplished discovery of a common nature can be made available, assuming sufficient commonality of interest is demonstrated.

Upon notice of this bill in the nature of interpleader, each claimant who has been served or notified will file within the time limits hereinabove set forth an appropriate pleading, reciting whether or not he wishes to participate in the interpleader action. Affirmative indication will be made by filing a statement of claim and appropriate accompanying pleadings as described under "Second 'Stage' of Interpleader", *supra*; a negative indication can be made by filing an appropriate written notification to that effect in this cause. For purposes of recognizing proper defendant-claimants in this interpleader action, it will be rebuttably presumed that a claimant who is merely "listed" is not properly in the suit; he must undertake affirmative action evidencing the filing of a claim.

On or before June 16, 1975, which is approximately 30 days after the date for filing of claims by claimants, counsel for plaintiffs will file in this cause a verified correct list of all claimants with complete addresses, the nature of the claims asserted and the damages alleged. This list will include, where appropriate, the names and addresses of claimants' counsel.

### D. Status Report and Request for Pretrial Conference

On or before July 1, 1975, counsel for plaintiffs will file a status report in this cause outlining the status of the litigation, describing the prospects of settlement and rendering a frank assessment of matters to be adjudicated. Counsel for claimants will have 10 days thereafter in which to respond and set forth their respective views and recommendations for advancing the litigation. In the event that a pretrial conference is felt to be appropriate in order to set deadlines for completion of discovery and the resolution of all procedural matters, such conference should be requested.

### XII. CONCLUSION

To summarize, the Court has by this Memorandum and Order decreed: that its prior Memorandum and Order of November 1, 1974, be withdrawn in its entirety and this Memorandum and Order be substituted therefor; that the Bill in the Nature of Interpleader be provisionally accepted as to the plaintiff-insurers; that parties previously designated as plaintiff-insureds—Angelo's, Dutchman and Eddie's—have now been provisionally designated as defendant-claimants; that deposit has been accepted into the Court's registry of all appropriate proceeds to the fund; that the total proceeds available in this interpleader action are $1,552,533.15; that all persons litigating suits pertaining to the subject hepatitis epidemic involving the insurers and insureds in any other federal or state court are hereby preliminarily enjoined and stayed from proceeding with such litigation until further notice; and that service of process on all known potential claimants is authorized and may commence immediately.

The chronicle capsuling the tentative timetable established in this Memorandum and Order by the Court is as follows:

## TIMETABLE

(a) JANUARY 15, 1975—Proposed order to be submitted by plaintiffs' counsel suggesting for the Court's approval language to be utilized in advertisement-notices to be published as well as proposed notice to other courts of the pendency of this interpleader action and the injunctive relief provisionally afforded.

(b) FEBRUARY 28, 1975—Deadline for completing notification and service of process on claimants.

(c) MARCH 31, 1975—

(1) Report to be submitted by plaintiffs' counsel listing all claimants who have been notified and served, all known claimants who have not been located and served to date, and the names of adverse claimants with diverse citizenship who have been served; also a report will be submitted setting out detailed financial statements of the insureds.

(2) Appropriate motions, if necessary, and accompanying briefs to be submitted by claimants' counsel on the issue of enjoining claimants from prosecuting claims in other forums during the pendency of the interpleader action in this Court.

(d) MAY 15, 1975—Deadline for filing of claims and responsive pleadings by claimants. If they have not already done so, those claimants who respond either will file their affirmative claims as specified herein or indicate a desire not to participate in the interpleader action.

(e) JUNE 16, 1975—Report to be submitted by plaintiffs' counsel listing all claimants who have filed, including a list of complete addresses, the nature of the claims asserted and the damages alleged.

(f) JULY 1, 1975—Status report to be submitted by plaintiffs' counsel outlining the status of the litigation, the prospects of settlement and a frank assessment of matters to be adjudicated. Request for pretrial conference should also be made, if appropriate.

(g) JULY 14, 1975—Responses to the status report to be submitted by claimants' counsel, if appropriate.

## SUPPLEMENTAL MEMORANDUM AND ORDER

## I. POST–FILING DETERMINATION OF JURISDICTION

### A. Introduction

This Order supplements the Court's Order of January 2, 1975 ("January 2 Order") and resolves jurisdictional and limitations issues not resolved there. In the January 2 Order the Court provisionally accepted a bill in the nature of interpleader as to the plaintiff-insurers and conditionally approved subject matter and personal jurisdiction over the action brought pursuant to 28 U.S.C. §§ 1335, 2361 and 1397.

The Court at that time enjoined temporarily all claimants and potential claimants from proceeding with any litigation elsewhere, directed them to file answers and claims in the instant action, and stated that in accordance with a timetable therein established, the defendant-claimants were to aid the Court by means of appropriate memoranda of authorities in deciding whether this Court's jurisdiction was proper unqualifiedly as to the interplead funds on deposit in the Registry of the Court.

Having had the full benefit of such briefing, the Court concludes unconditionally that subject matter jurisdiction and personal jurisdiction are proper in this Court as to the pending interpleader action and that the proceedings may go forward, as hereinafter set out.

### B. Response of Claimants' Counsel to Jurisdictional Questions

#### 1. Majority View: Settlement of Liability; Procedures for Handling Damage Claims

In their submitted memoranda most claimants' counsel do not contest this Court's jurisdiction as to the interplead fund but rather state a willingness to accede to the Court's jurisdiction on the condition that several events take place concerning the handling of claims. This calendar of events actually constitutes a proposed non-judicial resolution of the question of liability as to each claimant and a suggested

procedural format thereafter for handling individual damage claims.

### 2. Minority View: No Subject Matter Jurisdiction

However, certain claimants do challenge the Court's subject matter jurisdiction. The gist of this opposition is as follows: (1) the insurers allegedly are improper parties plaintiff in this case because no contractual liability exists between the insurers and the claimants and also because Texas has no direct action statute, thus allegedly precluding suit by the insurers against the claimants to prevent recovery of policy proceeds; (2) diversity of citizenship is alleged to be lacking; and (3) not all available funds have been deposited in the Court Registry, in accordance with 28 U.S.C. § 1335, because separate incidents of injury occurred, allegedly requiring payment on a "per occurrence" basis and because several claims were previously settled, allegedly improperly depleting the available fund.

### C. Jurisdictional Analysis of Claimants' Opposition

#### 1. Propriety of Suit by the Insurers; Direct Action Against the Insurers

▮▮▮ None of these arguments deprives this Court of proper jurisdiction in this case. First, in this statutory action brought as a bill in the nature of interpleader, the insurers are certainly the proper, if not the only, parties who can bring suit to interplead those persons claiming a right to proceeds from the fund. Absence of contractual liability between the insurers and the claimants is thus not relevant. The insurers' fund is partially what was sought by many claimants when they sued the insureds in state court on a theory of alleged tort liability. Similarly, the absence of a "direct action" statute in Texas does not bear on this Court's interpleader jurisdiction nor bar the insurers from filing this action under 28 U.S.C. § 1335. As the Court noted in the January 2 Order, proper alignment of parties can be resolved after the suit is filed. Whether the insureds are designated initially as defendant-claimants because

they are contesting the right to policy proceeds or more conventionally as plaintiffs along with the insurers who have the duty to represent them, such alternative designations do not affect the Court's jurisdiction in a statutory interpleader case. *MFA Mut. Ins. Co. v. Lusby*, 295 F.Supp. 660 (E.D.Va. 1969).

#### 2. Diversity of Citizenship Under 28 U.S.C. § 1335

▮▮▮ Second, diversity of citizenship is not lacking in this case. While complete diversity is required for proper jurisdiction in Rule 22 interpleader actions, Fed.R.Civ.P. 22, such a requirement does not exist in statutory interpleader actions. As the Supreme Court noted in *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), 28 U.S.C. § 1335 requires only that there be diversity of citizenship between two adverse claimants. The insurers in this case have demonstrated properly to the Court in accordance with the requirements of the January 2 Order that citizens of states other than Texas have been properly served and have filed appropriate claims in the interpleader action. Diversity therefore exists between these claimants and others who are citizens of Texas.

#### 3. Compliance with Statutory Requirement of Deposit of Proceeds in Court Registry

▮▮▮ Third, the Court concludes that all available funds have been deposited properly in the Registry of the Court. The argument that such proceeds should be calculated on a "per occurrence" basis is misplaced here. The applicable policies submitted to the Court as part of the record in this case make clear that the coverage purchased by the insureds in this case was on an "annual percentage", and not on a "per occurrence", basis. The insurers have appropriately submitted to the Court all proceeds available for the policy year during which the events culminating in the massive outbreak of hepatitis occurred.

**1254**

As for settlements that the insurers entered into before commencement of the interpleader action which were paid out of available proceeds, the Court does not view such action as translating into a failure to comply with the requirements of § 1335. The insurers had the right under Texas law, and perhaps even the obligation as representatives of the insureds, to attempt to settle amicably and by nonjudicial means the large volume of claims against the insureds which surfaced early. To this end, settlement was an appropriate avenue for the insurers to explore in order to avoid incurring potentially substantial litigation expenses and a corresponding depletion of available policy proceeds.

Certainly § 1335 places no preliminary duty on an insurer to file first a federal interpleader action, nor does it enact any policy seeking to override the important public policy of permitting insurers to attempt to settle large actions out-of-court. Indeed, as a practical matter, settlement cannot be accomplished after suit is filed without Court approval because of the need to deposit all funds in the Court Registry at the time of filing.

The interpleader statute is remedial in nature and is to be liberally construed. *National Fire Ins. Co. v. Sanders*, 38 F.2d 212 (5th Cir. 1930). The insurance carrier may resort to statutory interpleader where adverse claims are unliquidated tort claims against its insured. *Travelers Indem. Co. v. Greyhound Lines, Inc.*, 260 F.Supp. 530 (W.D.La.1966), *aff'd per curiam*, 377 F.2d 325 (5th Cir. 1967), *cert. denied*, 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1968). The record in this case indicates that the insurers had attempted to settle claims until such time as they realized that full settlement could not be achieved in view of the number of suits being filed, the magnitude of the potential liability exposure and the corresponding possibility that the funds might be depleted entirely before all claims were known or settled.

At that point, the insurers filed the federal statutory interpleader action. The pre-litigation or post-filing conduct by the insurers demonstrates nothing but proper compliance with the requirements of 28 U.S.C. § 1335.

### 4. Conclusion

Therefore, subject matter jurisdiction and personal jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1335 and its companion statutes, and the action in the nature of interpleader can go forward.

### D. Effect of the Federal Interpleader Action on Pending State Court Claims

Another jurisdictional question left open by this Court's January 2 Order was the proper scope of statutory interpleader jurisdiction. When the interpleader action was filed, the insurers urged in moving to enjoin pending actions in other courts that the law as to the scope of 28 U.S.C. § 1335 was determined by the insureds' virtual insolvency beyond the proceeds available in the fund. According to the insurers, based on language in the Supreme Court's *Tashire* decision, 386 U.S. at 533–34, 87 S.Ct. at 1205, 18 L.Ed.2d at 276, the fund was the sole target of the claimants here, and thus the insurers could utilize the interpleader action equitably to prevent any claimant or potential claimant from ever proceeding against the insureds in any other court to recover as a tort victim on the basis of the events which gave rise to the interpleader action. *See* Part X.B.3., *supra* (January 2 Order).

Upon carefully reviewing applicable authorities and scholarly commentary, *e. g.*, *Travelers Indem. Co. v. Greyhound Lines, Inc.*, *supra*, 377 F.2d 325; Wright, Law of Federal Courts § 74 at 326 (1970 ed.); Comment, *Promoting Judicial Economy through the Extension of Interpleader to the Tortfeasor in the Mass Tort Area*, 17 Wayne L.Rev. 1241 (1971), the Court concludes that its authority under § 1335 does not extend as a matter of jurisdiction in this case to subsequent state court actions pursued against other assets after the conclusion of the interpleader proceeding. The

sole *res* with which this Court is concerned is the interplead fund. Interpleader claimants thus properly can be enjoined during the pendency of the instant action in order to permit orderly determination of the appropriate distribution of proceeds from this fund and to avoid multiple, vexatious litigation as to the fund. But statutory interpleader is not an all-purpose bill of peace and cannot be invoked in a case such as this one to prevent claimants who have filed timely in state court against the insureds from going forward with such actions, if they so desire, at the conclusion of this action in the nature of interpleader.[1]

### E. Statute of Limitations

 Texas law is applicable in this case since the events giving rise to suit took place in Harris County, Texas. Such law imposes a two-year limit for filing suit in this tort action. Tex.Rev.Civ.Stat.Ann. art. 5526(6). Thus, limitations expired in this case no later than December 1, 1975, since it is apparent that no allegedly contaminated oysters of the insureds were consumed by any person later than November 30, 1973.

The injunction entered by this Court in the January 2 Order as to pursuit of actions in other federal or state courts was accompanied by a deadline for filing claims in this interpleader action, which was designated as May 15, 1975, to promote prompt adjudication of the rights of claimants to the interplead fund. Most claimants met this deadline. The Court further stated that claims filed late would be scrutinized to see whether sufficient cause had been demonstrated so as to permit late filing.

Following the May 15 deadline, a claimants' meeting with plaintiffs' counsel was held on December 12, 1975, at which the attendance of all counsel was required. Counsel for the plaintiffs filed a list prior to this meeting ("December 8 List") setting out all known claimants, indicating which claimants had or had not filed a claim, and

whether service had been executed on those who had not.

The meeting prompted the filing of claims and the appearance of counsel who had not yet filed on behalf of claimants who wished to participate in the interpleader action. All claimants seeking to file late claims were instructed, in accordance with the January 2 Order, to apply for leave of Court, setting out succinctly the reasons in favor of tolling limitations as to their respective claims.

Having reviewed the applications submitted, the Court concludes on the basis of the presentation made in each application that the application should be granted and the claim should be filed by the claimant within ten (10) days as to the following claimants: (1) Jesse Perego; (2) Ron Robb; (3) Peter Guarino; (4) Myra Guarino; (5) Robert L. Hill; (6) Jan Roush; (7) Billy Cutrer; (8) William Marks; (9) Joseph Cole; (10) Sandra Cole; (11) Beryl Houghton; (12) Robert Houghton; and (13) Gary Tucker. *See* note 1, *supra.*

According to a list submitted by plaintiffs' counsel after the December 12 meeting ("January 6 List"), counsel for claimants Edward Furrate, A. B. Alexander, Randy Alexander, Tom Ellis, Steven Braver, Judy Braver, James Carney, Robert Neese and Ken Stupka attended the December 12 meeting and expressed a desire to file claims on their behalf. However, to date such claims have not been filed.

In view of the December 1, 1975, expiration of limitations, a deadline for applying to the Court for leave to file a late claim is hereby established as May 21, 1976, as to all claimants who have heretofore been served or are on constructive notice of the pendency of this action. All such applications must be filed on or before May 21st accompanied by a detailed explanation for the tardy filing and a full statement of all reasons supporting a tolling of limitations as to such claims, including a recitation as

---

1. This ruling by the Court is of course applicable strictly to resolve a question of law and does not in any way restrict the rights of any party, whether insurer or claimant, in attempting to resolve non-judicially claims now pending.

to whether the application is opposed or unopposed. Applications filed after Friday, May 21, 1976, will not be considered.

### F. Conclusion; Pre-Trial Meeting

Accordingly, within the appropriate jurisdictional and limitations framework, this case will resolve whether, and the extent to which, the proceeds of this interplead fund can be distributed properly and in an orderly fashion. However, prior to the establishment of discovery deadlines and pre-trial cut-off dates, the Court initially directs that a pre-trial meeting be held similar to the one conducted on December 12, 1975, wherein counsel engage in discussions utilizing similar administrative techniques and exploring fully all possible judicial and non-judicial means of resolving this suit. All claimants' counsel and counsel for the insurers will attend this meeting, which will take place at the Federal Courthouse on Friday, May 28, 1976, at 9:00 a. m. in Courtroom No. 2 on the 9th floor ("May 28 Meeting"). Plaintiffs' counsel shall notify all other counsel for claimants or claimants representing themselves pro se of this meeting by serving each of them with a copy of this Order by certified mail, return receipt requested. Additionally, after duly notifying all persons whose attendance is required at the May 28 meeting, plaintiffs' counsel shall specially inquire of counsel for claimants Robert Burroughs, David Henry, Jr., Perry Woelke, William Kirtley, Ronald McCormick, Joe Nelson, II, Donald Russo, Joseph Stearns, M. W. Wade and Hamilton Schrauff whether, in view of their absence from the December 12 meeting, they wish to continue to prosecute their claims on file in this action.

Prior to the May 28th meeting, plaintiffs' counsel will prepare for the Court as well as for filing in this cause no later than Tuesday, May 25, 1976, an updated list which will set forth in separate categories: (1) the names and addresses of all persons who have filed claims in this Court (with a corresponding list of their counsel, where appropriate); (2) the names and addresses of all persons who have been served in this cause (and the date of such service) who have not filed a claim in this Court; (3) the names and addresses of all persons who are considered to be potential claimants but who have never been served or located or otherwise put on notice of the pendency of this action; and (4) the name, address and telephone number of each counsel representing claimants in this cause listed together with the names of the claimants he or she represents.

Plaintiffs' counsel shall also prepare for the May 28 meeting and for filing in this cause an appropriate form which will serve as an "attendance sheet" on which to record the names of claimants, the names and signatures of counsel for claimants and the claimants who are representing themselves pro se, in sequence by claimant's representative.

Counsel for plaintiffs and those on the claimants' representatives committee including Attorney Dale Friend will confer in detail beforehand in order to ensure that a definitive agenda is agreed upon for the May 28 meeting. Such agenda should be reduced to writing and furnished to the Court no later than Tuesday, May 25, 1976. Last of all, counsel for plaintiffs and counsel on the claimants' representatives committee shall furnish, jointly or separately if necessary, a written report to the Court setting forth the results of such meeting and any agreements reached as to how this litigation should proceed from this point forward. Such report will be filed by Friday, June 4, 1976.